**HIGHLAND DISTRICT HOSPITAL,**
**Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH AND**
**HUMAN SERVICES,**
**Defendant-Appellee.**

No. 80–3586.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 18, 1982.

Decided April 26, 1982.

Stuart Tobin, Cincinnati, Ohio, for plaintiff-appellant.

James C. Cissell, U. S. Atty., Ann Marie Tracey, Asst. U. S. Atty., Cincinnati, Ohio, for defendant-appellee.

Before EDWARDS, Chief Judge, BROWN, Circuit Judge and COHN,* District Judge.

COHN, District Judge.

This appeal involves the complex statutory and regulatory scheme by which hospitals obtain review of determinations concerning cost reimbursement under the Federal Health Insurance for the Aged program, popularly known as Medicare.

### I.

### A.

Highland District Hospital (Highland) appeals from the district court's dismissal of its complaint for lack of subject matter jurisdiction and failure to exhaust administrative remedies. Highland sought judicial review of a decision by the Provider Reimbursement Review Board (PRRB) that the PRRB lacked jurisdiction to review a determination by Highland's fiscal intermediary, an agent of the Secretary of Health and Human Services under Medicare, disallowing certain cost reimbursements requested by Highland.

We affirm the judgment of the district court.

---

\* Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

### B.

Highland is the only acute care hospital in Hillsboro, Ohio. It owns a three floor building in which it operates a hospital on the first and second floors. During 1974 and 1975, Highland was qualified as a Medicare provider of in-patient medical services in the approximately 50–60 acute care beds located in rooms on the first and second floors of the building. The third floor of the building was operated by Highland as a skilled nursing facility which was qualified as a separate Medicare provider of extended care services in the approximately 30–35 beds located in rooms on that floor.

At various times during 1974 and 1975 all of the acute care beds located on the first and second floors were occupied. As additional acute care patients required admission, it was necessary to set up beds in the hallways on the first and second floors. Highland either assigned newly admitted patients directly to beds in the hallways or transferred patients from room beds to hallway beds. Some of the patients in the hallway beds and some of the patients in the room beds were eligible for Medicare.

At some time in 1974, Highland determined there were available beds in the rooms located in the skilled nursing facility on the third floor. It then transferred patients who were in hallway beds on the first and second floors to room beds on the third floor. Highland also reassigned portions of its staff and made available hospital services and equipment so that acute care patients treated on the third floor received the same level of care they previously received on the first and second floors. Thereafter as new acute care patients were admitted, each was assigned to the first available bed in a room, whether it was on the first, second or third floor. Vacant beds on the first and second floors were created either by discharge of a patient or by transfer of a patient to a skilled nursing facility bed on the third floor when acute care was no longer required.

The district court found and the Secretary conceded at oral argument that the level of care provided by Highland to acute care patients was identical, whether a patient was in a room or hallway on the first or second floors or on the third floor.

## C.

### 1.

To qualify for cost reimbursement under Medicare,[1] a hospital, a skilled nursing facility or other institution must become a "provider" under 42 U.S.C. § 1395x(u)[2] by, among other things, entering into an agreement with the Secretary meeting the requirements of § 1395cc(a) and § 1395f(a). Highland hospital and the Highland skilled nursing facility each entered into a provider agreement with the Secretary and each is a Medicare provider.[3] Part of the agreement binds the provider not to charge a Medicare-eligible patient (beneficiary) for any services payable under the program except in very limited circumstances, but instead to look only to a government trust fund for payment. Payment for services is based on a reasonable cost of or the customary charge for the services, § 1395f(b), which is defined in § 1395x(v) and the regulations at 42 C.F.R. § 405.401 et seq. The reasonable cost of hospital acute care is generally greater than for the extended care provided by a skilled nursing facility.

Day-to-day administration of the Medicare program is handled by "fiscal intermediaries", which are private nongovernmental entities nominated by a provider or a group of providers. Fiscal intermediaries enter into contracts with the Secretary, pursuant to the authority delegated by the Congress in § 1395h, to serve as the Secretary's agent for various functions, including auditing provider cost reimbursement requests. Often times health and accident insurance companies serve as fiscal intermediaries. Highland's fiscal intermediary is Blue Cross of Southwest Ohio (Blue Cross).

### 2.

Highland's cost reimbursement requests for 1974 and for 1975 included a request for hospital cost reimbursement for the acute care services provided to Medicare-eligible patients on the third floor. Those services were provided in beds in which extended care services were normally provided by the Highland skilled nursing facility. Blue Cross disallowed a part of these requests for each year, though transferring certain staff and operating costs attributable to the nursing and other personnel on the third floor and to diagnostic facilities relating to acute care patients on the third floor to the cost reimbursement requests of the Highland skilled nursing facility. Apparently the balance of the hospital cost reimbursement requests for services rendered on the third floor were disallowed by Blue Cross. See 42 C.F.R. § 405.1803(a). The amount in dispute was found by the district court to aggregate to approximately $200,000.

Blue Cross' determination not to allow Highland cost reimbursement for the acute care services rendered to patients treated in the skilled nursing facility beds was based on Section 3101 of the Intermediary Manual, H.I.M.–13,[4] which reads:

---

1. A more complete description of the Medicare program may be found in *Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger*, 517 F.2d 329, 334–36 (5th Cir. 1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976). *See also*: U.S. Dept. of Health and Human Services, *Social Security Bulletin, Annual Statistical Supplement* 13–15 (1980).

2. Unless otherwise indicated, all references to statutory sections are to Title 42 of the United States Code.

3. Highland hospital is provider # 36–0142. Highland skilled nursing facility is provider # 36–5266. Whether there is in fact common

ownership or common control of Highland hospital and Highland skilled nursing facility is not indicated in the record.

4. The Intermediary Manual, H.I.M.—13, is one of several manuals published by the Secretary. Its foreword provides:

"This manual provides guidelines and policies to implement Medicare regulations which set forth principles for determining the reasonable cost of provider services furnished under the Health Insurance for the Aged Act of 1965, as amended. These "Principles of Reimbursement for Provider Costs" have been published in HIRM–1. The provi-

"When patients requiring extended care services occupy beds in a hospital, they are considered inpatients of the hospital. In such cases, the services furnished in the hospital will not be considered extended care services, and payment may not be made under the program for such services .... Such a situation may arise where the hospital is part of an institution having a distinct part SNF [skilled nursing facility], and either there is no bed available in the distinct part SNF or for any other reason the institution fails to place the patient in an appropriate bed. The same rule applies where the hospital is a separate institution. *For the same reason, where patients who require inpatient hospital services occupy beds in a skilled nursing facility, payment cannot be made on their behalf for the services furnished to them in the SNF.*" (emphasis supplied)

The rationale for this exclusion stems from the fact that generally hospitals may only be reimbursed under Medicare for "inpatient hospital services", § 1395d(a)(1), which are defined in § 1395x(b) as "services furnished to an inpatient of a hospital ... by the hospital". It appears the Secretary takes the position that inpatients may only be treated on the physical premises of a hospital and thus inpatient hospital services may only be furnished on the physical premises of a hospital. Patients treated in a bed located in a skilled nursing facility are classified by the Secretary as patients of the skilled nursing facility rather than as inpatients of the hospital. The hospital thus cannot receive Medicare reimbursement for services rendered to those Medicare-eligible patients, notwithstanding that the services provided to them are identical to services provided to patients treated on the physical premises of the hospital. *See*

*Medicare and Medicaid Guide* (CCH) ¶¶ 1209, 1371.

Following Blue Cross' rejection of the Highland cost requests, it notified the various patients who had received acute care services on the third floor that payment could not be made to Highland hospital on their behalf and as a result they were responsible for amounts owed to Highland. § 1395cc(a)(1)(A).[5]

Highland requested a hearing before the PRRB in virtually identical letters dated June 16, 1976 (for 1974) and January 27, 1977 (for 1975). Highland argued to the PRRB that patients treated on the third floor of its building were placed in a designated area of the skilled nursing facility meeting the requirements of a "hospital", as defined in § 1395x(e), and that they received services identical to those described in § 1395x(b). Highland concluded by stating "we can find no provision in the law which would deny payment for the care given to these patients."

The PRRB dismissed Highland's requests for review in letters dated September 21, 1976 (for 1974) and October 26, 1977 (for 1975). The PRRB ruled that the disallowed costs involved a question of "coverage of inpatient hospital services received in the skilled nursing facility" and stated it could not "take jurisdiction in coverage issues", citing § 1395y. The PRRB also held that the annual costs transferred to the skilled nursing facility were in aggregate less than the $10,000 jurisdictional minimum for PRRB review, § 1395oo(a)(2).

Highland then filed this action seeking judicial review under § 1935oo(f). The district court dismissed the complaint on motion of the Secretary. In its memorandum opinion, the district court properly rejected the Secretary's argument that the PRRB's dismissal of Highland's appeal request was

---

sions of the law and the regulations are accurately reflected in this manual, but it does not have the effect of regulations."

**5.** Since a provider only agrees not to charge Medicare beneficiaries where payment may be made on their behalf under the program, § 1395cc(a)(1)(A), Highland hospital was free

to bill these patients once Blue Cross denied cost reimbursement on their behalf.

Presumably the individual patient would only be liable for the difference between the charges for services rendered by Highland hospital and the amount of cost reimbursement, if any, paid to the Highland skilled nursing facility on his or her behalf.

not a "final determination" by the PRRB permitting Highland to invoke § 1395*oo* (f). *Cleveland Memorial Hospital v. Califano*, 444 F.Supp. 125 (E.D.N.C.1978). The district judge concluded, after quoting extensively from *Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger*, 517 F.2d 329, 334–36 (5th Cir. 1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976), that (1) the PRRB correctly determined a question of coverage was involved and that therefore he was without jurisdiction; and (2) Highland had not exhausted the administrative remedies available under § 1395ff(c), from which judicial review would be available.

Highland then appealed to this court.

## II.

Highland argues the district court erred in ruling that the PRRB lacked jurisdiction to review the determinations by Blue Cross.[6] The Secretary responds that the PRRB and the district court correctly held that Blue Cross' determination was one of "coverage", thus precluding PRRB review. According to the Secretary, administrative and judicial review was available only to the individual beneficiaries under § 1395ff(b), or in the alternative, to Highland only under 42 C.F.R. §§ 405.710 and 405.730 rather than through the PRRB under § 1395*oo* (a), (f) and 42 C.F.R. §§ 405.-1835 and 405.1877.[7]

The review procedure Highland sought to invoke is set forth in § 1395*oo* and more fully described in regulations at 42 C.F.R. §§ 405.1835 and 405.1877. § 1395*oo* (a) provides in part:

"Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board if—

(1) such provider—

(A) is dissatisfied with a final determination of the organization serving as its fiscal intermediary pursuant to section 1395h of this title as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such report,

.    .    .    .    .

(2) the amount in controversy is $10,000 or more, and

(3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination under paragraph (1)(A) . . . ."

Administrative review by the Secretary on his own motion and judicial review are authorized by § 1395*oo* (f); however, a provider has no right to demand administrative review. 42 C.F.R. § 405.1875. *See John Muir Hospital, Inc. v. Schweiker*, 664 F.2d 1337 (9th Cir. 1981).

Section 1395*oo* (f) reads in part:

"(1) A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision. Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received. Such action shall be brought in the district court of the United States for the judicial district in which the provider is located."

The scope of both administrative and judicial review is limited by § 1395*oo* (g):

---

6. The district court's ruling that Highland had failed to exhaust administrative remedies under § 1395ff(c) is discussed at note 12, *infra*.

7. This alternative avenue of review available to Highland was advanced by the Secretary for the first time at oral argument, and is discussed at note 13, *infra*.

"The finding of a fiscal intermediary that no payment may be made under this subchapter for any expenses incurred for items or services furnished to an individual because such items or services are listed in section 1395y of this title shall not be reviewed by the Board, or by any court pursuant to an action brought under subsection (f) of this section."

The jurisdiction of the PRRB is thus contained in § 1395oo(a) as restricted by § 1395oo(g). The PRRB is empowered to decide questions relating to its own jurisdiction to grant a hearing, including determining issues of timeliness and amount in controversy. 42 C.F.R. § 405.1873(a). It is clear, however, that a determination by a fiscal intermediary that Medicare payment is not available for items and services because they are excluded under § 1395y is outside the jurisdiction of the PRRB. 42 C.F.R. § 405.1873(b).

### III.

#### A.

Both the PRRB and the district court agreed with the Secretary's position that Highland's appeal from the denial of its reimbursement requests could not be heard by the PRRB because a question of "coverage" was involved. Yet neither the statute nor the regulations employ or define the term "coverage" in delineating PRRB jurisdiction. The legislative history, while making it clear that questions of coverage are outside the PRRB review process, does not define what is or is not a coverage question.

The term "coverage" in this context is used, apparently for the only time, in the Report of the House Ways and Means Committee on the Social Security Amendments of 1972, P.L.92–603, 86 Stat. 1329 (1972):

"Provider reimbursement review board.— Under present law there is no specific provision for an appeal by a provider of services of a fiscal intermediary's final reasonable cost determination. Although the HEW has developed administrative procedures to assist providers and intermediaries to reach reasonable and mutually satisfactory settlements of disputed reimbursement items, your committee believes that it is desirable to prescribe in law a specific procedure for settling disputed final determinations applying to the amount of program reimbursement. *This procedure would not apply to questions of coverage or disputes involving individual beneficiary claims.*" (emphasis supplied)

H.R.Rep.No.231, 92nd Cong., 2nd Sess., *reprinted in* [1972] *U.S.Code Cong. and Ad. News* 4989, 5094.

In *Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger, supra,* the Fifth Circuit defined "coverage" questions as those issues framed by §§ 1395d and 1395y. 517 F.2d at 335. § 1395d defines the benefits covered by Medicare, consisting of inpatient hospital services, extended care services and home health services. § 1395d(a)(1)–(3). § 1395y defines exclusions from the general definition of the scope of benefits in § 1395d. Under this analysis, a service is "covered" if it falls within the scope of benefits defined by § 1395d and is not excluded by § 1395y. A "coverage" issue thus is involved where the question is whether services rendered fall within the scope of benefits defined by § 1395d or are excluded by § 1395y.

In this case, Blue Cross determined that Highland was not entitled to cost reimbursement for acute care services provided in the skilled nursing facility because in its view those services were not inpatient hospital services under § 1395d. "Inpatient hospital services" are defined in § 1395x(b) as various listed "items and services furnished to an inpatient of a hospital ... by the hospital". As noted earlier, the Secretary does not regard a patient in a skilled nursing facility bed as a patient of the hospital, but rather as a patient of the skilled nursing facility.[8] Any service ren-

---

**8.** Although so classified, apparently the Highland skilled nursing facility will have difficulty obtaining cost reimbursement for Medicare charges and patients days attributable to acute care services provided to Medicare-eligible patients on its premises because the list of serv-

dered to such a patient thus cannot by definition qualify as "inpatient hospital services" under §§ 1395d and 1395x(b) because they were not rendered to an inpatient of the hospital, even though an identical service provided to a patient in an acute care bed in the hospital would qualify.

■ Highland takes the position that the portion of the skilled nursing facility into which acute care patients were placed constituted a "hospital" under § 1395x(e) so that patients treated there were inpatients of a hospital and thus received inpatient hospital services. At its core, the dispute is whether acute care services rendered to persons on the premises of another provider qualify as "inpatient hospital services" under § 1395d. Clearly a question of § 1395d "coverage" is involved.

### B.

The PRRB's determination that it lacked jurisdiction and the district court's holding to that effect were correct.[9] In addition to the Fifth Circuit's definition of "coverage" issues in *Mount Sinai, supra,* the jurisdictional language of § 1395oo(a) evidences a Congressional intent that PRRB review is limited to issues of cost reasonableness and the amount of reimbursement due a provider for admittedly covered services.[10] § 1395oo(a)(1)(A) allows PRRB review where a provider

> "is dissatisfied with a final determination of the organization serving as its fiscal intermediary pursuant to section 1395h of this title as to the *amount of total program reimbursement due the provider for the items and services furnished to individuals for which payments may be made under this subchapter for the period covered by such report.*" (emphasis supplied)

It appears what was contemplated by this language was a review board designed to determine disputes between a provider and its fiscal intermediary over what was a reasonable cost for an admittedly covered service rendered to a Medicare beneficiary. A requirement for PRRB review under this section is a dispute concerning an item or service "for which payment may be made", contemplating no dispute over whether or not the item or service is "covered" under §§ 1395d and 1395y.

Moreover, the structure of the PRRB as mandated by § 1395oo(h) and 42 C.F.R. § 405.1845 indicates it is not designed to review the type of issues raised by Highland in its appeal requests. The PRRB consists of five members appointed by the Secretary. Two members of the PRRB must be representative of providers; one member must be a certified public accountant; all must be knowledgeable in the field of cost reimbursement. The PRRB's expertise, as evidenced by its membership and the skill required of its members, is designed to determine and review issues of reasonable cost. Issues of cost are by no means simple problems, *Mount Sinai, supra,* 517 F.2d at 335, but they are a different species than issues of coverage.

Finally, it is significant that Highland has not cited a single PRRB ruling or case in which the PRRB has reviewed the merits of a fiscal intermediary's determination on an issue of the type it raises here and, if the provider did not prevail, invoked the judicial review provisions of § 1395oo(f). *Bass v. Secretary of HEW, Medicare and Medicaid Guide* (CCH) ¶ 26,260 (S.D.Ohio February 26, 1971), the only relevant case on the

---

ices it is allowed to provide does not include acute care services. § 1395x(h) and (j).

**9.** The PRRB's reference to § 1395y as a basis for denying Highland's appeal requests was incorrect. While § 1395oo(g) precludes PRRB jurisdiction over fiscal intermediary determination that services are excluded under § 1395y, Blue Cross' determination was not under that section. None of the coverage exclusions in § 1395y apply to Highland. Nonetheless, the

PRRB's conclusion that it was without jurisdiction was correct and thus the error is harmless.

**10.** These issues necessarily include fiscal intermediary determinations regarding depreciation and amortization costs as well as costs more directly related to patient care. *See Chelsea Community Hospital v. Michigan Blue Cross Association,* 630 F.2d 1131, 1133 n. 2 (6th Cir. 1980).

merits relied on by Highland, was an appeal by a medicare beneficiary from a determination of the Secretary under § 1395ff(b) rather than a provider appeal from the PRRB under § 1395oo (f).[11]

■ Our research has been similarly unfruitful from Highland's point of view. Most of the reported cases discussing coverage issues are beneficiary appeals under § 1395ff(b) as in *Bass*. *See Hultzman v. Weinberger*, 495 F.2d 1276 (3rd Cir. 1974); *Torphy v. Weinberger*, 384 F.Supp. 1117 (E.D.Wis.1974); *Hayner v. Weinberger*, 382 F.Supp. 762 (E.D.N.Y.1974). Judicial review is available to the provider under § 1395ff(c) where the Secretary makes an adverse determination concerning the institution's status as a provider, a matter not in issue here.[12] *See United States v. Bellevue Hospital, Inc.*, 479 F.Supp. 780, 782 (D.Mass. 1979). Finally, a provider may seek judicial review under § 1395pp(d) [13] of a determination by its fiscal intermediary that certain cost reimbursements are excluded under § 1395y(a)(1) or (9)—expenses not reasonable and necessary for the diagnosis or treatment of illness or injury or expenses for custodial care—because the beneficiary or the provider knew or should have known the services were excluded and the Secretary determines the beneficiaries will not exercise their appeal rights under

11. § 1395ff(b) provides:
"(1) Any individual dissatisfied with any determination under subsection (a) of this section as to—
(C) the amount of benefits under Part A of this subchapter (including a determination where such amount is determined to be zero) shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title."
A provider is not an "individual" for purposes of seeking review under this subsection. *U. S. v. Bellevue Hospital, Inc.*, 479 F.Supp. 780, 782 (D.Mass.1979). This subsection will be discussed more fully below.

12. The district court referred to administrative remedies and judicial review under § 1395ff(c), to which it believed Highland would be entitled and, as to the former, had failed to exhaust. § 1395ff(c) reads:
"Any institution or agency dissatisfied with any determination by the Secretary that it is not a provider of services, or with any determination described in section 13955cc(b)(2) of this title, shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title."
Since Highland's status as a provider was never in issue, this portion of the district court's ruling was erroneous. In light of our conclusion that the district court correctly ruled the PRRB lacked jurisdiction over Highland's appeal requests, however, the error is harmless.

13. The procedure set forth in § 1395pp(d) is explicated in the regulations at 42 C.F.R. § 405.701 *et seq.* The Secretary contended for the first time at oral argument that Highland should have pursued this available course of administrative and judicial review rather than seeking review through the PRRB.
A provider, however, may only seek administrative review under this procedure in the event of an initial determination by its fiscal intermediary that payment may not be made for services rendered because they are excluded under § 1395y(a)(1) or (9) and because either the beneficiary or the provider knew or should have known the services were excluded. 42 C.F.R. §§ 405.704(b), 405.710(b). Furthermore, if the fiscal intermediary determines the beneficiary knew or should have known of the exclusion, the beneficiary must indicate in writing that he does not wish to seek administrative review before such review is available to the provider. 42 C.F.R. § 405.710(b).
Judicial review is available to the provider only if the Secretary determines the beneficiaries affected will not exercise their rights to administrative and judicial review under § 1395ff(b); the provider is then allowed to step into the beneficiaries' shoes under § 1395pp(d). 42 C.F.R. § 405.730. That is most likely to occur where the fiscal intermediary determines the provider alone knew or should have known of the exclusion and the Secretary indemnifies the beneficiary for any payments made by him to the provider, § 1395pp(b), or where the Secretary determines that for practical or other reasons the beneficiaries will pay the charges assessed by the hospital and will not exercise their right to review. § 1395pp(c).
Since the fiscal intermediary could not have properly made and did not make a finding that payment for the services rendered by Highland in skilled nursing facility beds on the third floor were excluded under § 1395y(a)(1) or (9), the review procedure advanced by the Secretary at oral argument was unavailable to Highland.

§ 1395ff(b). *See Monmouth Medical Center v. Harris*, 494 F.Supp. 590, 592 (D.N.J. 1980), *aff'd*, 646 F.2d 74 (3rd Cir. 1981). Blue Cross' determination here was a matter of coverage under § 1395d and did not involve § 1395y(a)(1) or (9). In short, we have been unable to locate any support for Highland's claim that it is entitled to review under the circumstances which obtain here.

### IV.

Our conclusion that Highland is not entitled to PRRB review of Blue Cross' disallowance of cost reimbursement for acute care services provided in the skilled nursing facility does not leave Highland without the opportunity to recover its costs. The provider agreement Highland entered into with the Secretary obligated it not to charge Medicare-eligible patients "for any items or services for which such individual is entitled to have payment made under this subchapter", § 1395cc(a)(1)(A), but instead to look only to the government for payment. Once Blue Cross determined payment could not be made to Highland on behalf of Medicare-eligible acute care patients treated in the skilled nursing facility on the third floor, it notified those patients that payment would not be provided by Medicare. Each beneficiary was informed:

> "Medicare will cover inpatient hospital services provided whenever a patient is admitted to the certified section of a hospital.
>
> The services you received beginning _____ were rendered while you were a patient in the certified skilled nursing facility area of the Highland District Hospital. Therefore, no hospital benefits can be provided by the Medicare Program for the entire stay."

■ Highland was then no longer bound by its agreement not to charge these patients for acute care services rendered in

the skilled nursing facility and was free to do so. As Medicare-eligible beneficiaries, the patients had available to them procedures for administrative and judicial review of the fiscal intermediary's determination of non-coverage. ℥ 1395ff(b). Each beneficiary could demand reconsideration under 42 C.F.R. § 405.710(a),[14] a hearing before an administrative law judge under 42 C.F.R. § 405.720, Appeals Council review under 42 C.F.R. § 405.724 and judicial review under 42 C.F.R. § 405.730 as authorized by § 1395ff(b).

Since each patient was contractually liable to Highland for the services rendered, each had the incentive to invoke the administrative and judicial avenues of review available. The decision by Blue Cross was in no sense unreviewable; the review proceedings simply had to be invoked by the putative beneficiaries rather than by Highland as the provider.

Highland's attempt to invoke a separate avenue of review through the PRRB to obtain payment was in effect an effort to substitute the federal government for the patient as the debtor. While there are certainly practical differences between being a creditor of the federal government and a creditor of an individual patient, *Mount Sinai, supra*, 517 F.2d at 335, Congress did not intend to allow both the patient debtor and the provider creditor to appeal the determination of the fiscal intermediary. *See* § 1395pp(d). Highland's remedy is to collect from the patient, who then contests the coverage issue with the Secretary.

The intent of the Medicare program, in a general sense, is to provide assistance to the elderly in meeting medical costs and a coordinated approach for health insurance and medical care for the elderly to assure the availability of medical care. S.Rep.No.404, 88th Cong. 1st Sess., *reprinted in* [1965] *U.S.Code Cong. and Ad.News* 1943, 1964; *Lord v. Richardson*, 356 F.Supp. 232, 235 (S.D.Ind.1972). Cost reimbursement to pro-

---

14. The scope of administrative review available to beneficiaries on reconsideration under 42 C.F.R. § 405.710(a), authorized by 42 C.F.R. § 405.704(a), is much broader than that available to providers as authorized by 42 C.F.R. § 405.704(b). Specifically, issues of coverage and "any other issue having a present or potential effect on the amount of benefits to be paid" are included. 42 C.F.R. § 405.704(a)(1), (13).

viders is but a means for accomplishing those goals, allowing the provider to rely on the federal government rather than the patient for payment. While a provider such as Highland may with good reason prefer to look to the federal government rather than to an individual, it has no independent right to cost reimbursement or to choose its debtor; it must follow the review procedures set forth in the statute and regulations. In this instance, Highland had to look to its patients for payment and allow them the opportunity to pursue review of Blue Cross' determination.

### V.

Accordingly, we conclude the determination by Blue Cross that Medicare payment could not be made on behalf of Medicare-eligible patients who received acute care services in the Highland skilled nursing facility involved a question of coverage under § 1395d.[15] Thus, the PRRB was without jurisdiction to hear Highland's appeal requests. The judgment of the district court is AFFIRMED.

**15.** The merit of this determination is not an issue before us. It is not clear from the briefs and oral argument what the end result of this denial of cost reimbursement to Highland for acute care services rendered in the skilled nursing facility will be. Since it is admitted Highland only placed acute care patients in skilled nursing facility beds because no beds were available in the hospital part of the building and that an identical level of care was provided to acute care patients wherever located, the rationale of the Secretary's position is not apparent. Perhaps it stems from a fear that other less scrupulous providers will attempt to obtain reimbursement for acute care services rendered in skilled nursing facility beds when in fact only less costly extended care services were provided. Whatever the rationale, the logical result of the Secretary's position is that hospitals would be forced to obtain certification for enough beds to cover peak demand periods, leaving beds empty in periods of more slack demand.

Perhaps recognizing that this result would only further increase the already all-too-high costs of medical care for the elderly, Congress in 1980 authorized the Secretary to contract with certain small rural hospital providers to provide "swing-beds", which may be used for either acute care or extended care services depending upon need. Medicare and Medicaid Amendments of 1980, §§ 902, 904, 42 U.S.C. §§ 1395x(v)(1)(G), 1395tt. *See Medicare and Medicaid Guide* (CCH) ¶ 24,307 (portion of House Commerce Committee Report). In addition, effective January 1981, if a patient requiring a higher level of care is erroneously transferred to a lower level of care bed by a provider acting in good faith or on the advice of a fiscal intermediary, among other reasons, the provider may nevertheless receive payment for the higher level of care actually rendered. *Medicare and Medicaid Guide* (CCH) ¶ 1317. Of course, neither of these provisions is applicable to Highland for the years involved here.