The **EDGEWATER HOSPITAL, INC.,**
Plaintiff–Appellee,

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services,**
Defendant–Appellant.

No. 87–1699.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 9, 1987.
Decided Sept. 15, 1988.

Richard A. Urbin, Asst. Counsel, Dept. of Health and Human Services, Chicago, Ill., for defendant-appellant.

Howard M. Hoffmann, Norman B. Berger, John L. Hines, Jr., Holleb & Coff, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*

---

* Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

GRANT, Senior District Judge.

Edgewater Hospital requested a hearing from the Provider Reimbursement Review Board to review the fiscal intermediary's disallowance of certain Medicare reimbursements. When the Board denied the request for lack of jurisdiction, the hospital filed suit in district court against the Secretary of Health and Human Services. The district court granted the hospital's motion for summary judgment. The Secretary appeals that determination. For the reasons stated below, we affirm in part and reverse and vacate in part.

## FACTS

### 1. *Medicare Reimbursement Procedures*

Appellee, The Edgewater Hospital, Inc. [Edgewater], is a qualified provider of Medicare services. The Medicare Program (Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* (1982 ed. and Supp. III)) reimburses such a provider for authorized health care services given to qualified elderly and disabled patients. Although the Secretary of Health and Human Services administers the Program, private "fiscal intermediaries" functioning as the Secretary's agent (42 U.S.C. § 1395h) are responsible for reviewing the claims submitted by a provider. In the case herein, Blue Cross/Blue Shield of Illinois [BCBS] was the fiscal intermediary for Edgewater Hospital.

The reimbursement procedures are statutorily established. The provider submits a cost report covering a twelve-month period to the fiscal intermediary for reimbursement of the "reasonable cost" of services rendered to Medicare patients. 42 C.F.R. § 405.1801(b). After analyzing and auditing the cost report, the intermediary issues a Notice of Program Reimbursement [NPR] which specifies the allowed and disallowed Medicare expenses and sets forth the total amount of reimbursement due the provider. 42 C.F.R. § 405.1803.

A dissatisfied provider may appeal the intermediary's final determination by re-

questing a hearing, in writing, before the Provider Reimbursement Review Board [PRRB or Board], within 180 days of the issuance of the Notice of Program Reimbursement. 42 U.S.C. § 1395oo(a). The PRRB has the power to affirm, modify, or reverse decisions of a fiscal intermediary. 42 U.S.C. § 1395oo(d). If the provider is dissatisfied with the Board's final decision, it may seek review in the United States District Court.[1] 42 U.S.C. § 1395oo(f).

### 2. *Edgewater Hospital's Medicare Claims*

The facts in this case are not in dispute. Edgewater claimed Medicare reimbursement for its fiscal year ending March 31, 1983, by submitting a cost report to its fiscal intermediary BCBS. On February 15, 1984, BCBS issued a Notice of Program Reimbursement specifically disallowing four items. By letter of February 23, 1984, Edgewater requested that the intermediary reconsider the four disallowances. BCBS responded on March 22, 1984, with a letter to Edgewater stating its reasons for not changing three of the disallowed claims but granting Edgewater's fourth disputed claim. On March 30, 1984, BCBS sent Edgewater a second Notice of Program Reimbursement, stating that it was the "Revised and Final Settlement of Reopened Cost Report," with the recalculated adjustment for the one item allowed after reconsideration.

On September 26, 1984, Edgewater sent a notice of appeal to the Board, seeking a hearing on two of the denied adjustments. The appeal was filed within 180 days of the issuance of the second Notice of Program Reimbursement, but outside the time period if calculated from the first Notice. The Board notified Edgewater by letter of May 1, 1985, that the hospital's review request was denied for the reason that, the appeal not having been filed within 180 days of the first Notice, the Board lacked jurisdiction pursuant to 42 U.S.C. § 1395oo(a).

---

**1.** A provider may also seek judicial review of a final decision by the Secretary, in the event the

Secretary reverses, modifies or affirms the Board's decision. 42 U.S.C. § 1395oo(f)(1).

3. *Court Disposition: Edgewater Hospital v. Bowen,* 664 F.Supp. 1128 (N.D.Ill. 1986).

On June 25, 1985, Edgewater filed a complaint against the Secretary of Health and Human Services in district court, seeking judicial review of the Board's decision and claiming deprivation of property without due process of law. Edgewater and the Secretary filed cross-motions for summary judgment.

The magistrate to whom the motions had been referred recommended that the district court grant Edgewater's motion for summary judgment, deny the Secretary's motion, and order the Board to consider Edgewater's claims. 664 F.Supp. at 1131. Relying on *St. Joseph's Hospital of Kansas City v. Heckler,* 786 F.2d 848 (8th Cir. 1986), the magistrate noted that a "final decision" for purposes of judicial review includes the Board's decision that a provider has failed to satisfy the threshold requirements of section 1395oo(a). *Id.* The magistrate also rejected the D.C. Circuit cases upon which the Secretary relied, *Athens Community Hospital, Inc. v. Schweiker,* 743 F.2d 1 (D.C.Cir.1984) and *St. Mary of Nazareth Hospital Center v. Schweiker,* 741 F.2d 1447 (D.C.Cir.1984), in two ways. First, he concluded that they were inapposite to the facts herein, since they concerned claims not included in the original cost reports, claims raised *after* the NPR was issued. Second, even though *Athens* stated that "only the matters revised are open to review," 743 F.2d at 8, "Edgewater had no notice that the items claimed ... would not be revised until the second NPR of March 30, 1984 or at least until the letter of March 22, 1984, from the intermediary." *Id.* Because the intermediary considered Edgewater's four disputed claims in its March 22, 1984 letter, "it would defeat the 'salutory [sic] purposes' of section 1395oo(f) to begin the 180–day appeal period [before] the second NPR was issued on March 30, 1984." *Id.*

The district court adopted the magistrate's report and recommendation. *Id.* at 1129. It found that both notices were entitled "Notice of Program Reimbursement," and that both contained the provision that the health care provider could request a Board hearing within 180 days of the Notice. Further, the second one was also designated the "Revised and Final Settlement of Reopened Cost Report." Since Edgewater filed its appeal within 180 days of the second Notice, in accordance with its directive, the court held that "the Secretary is estopped from claiming that the plaintiff was required to appeal within 180 days of the first NPR." The district court granted plaintiff's motion for summary judgment and ordered the Board hearing; it did not address the plaintiff's constitutional due process claims.

### Issues

Before the court are three disputes concerning "finality": (1) Which NPR was the "final determination" under § 1395oo(a)(3) that triggered the 180–day period for filing an appeal to the PRRB; (2) Was the PRRB's decision that it lacked jurisdiction a "final decision of the Board" which gives providers the right to judicial review; and (3) Was the district court's decision "final and appealable" to this court. In other words, we are faced with jurisdictional problems at every level of determination. The Secretary has also raised two other issues: whether a Medicare intermediary's revisions to a cost report are "issue specific," so that only revised cost items may be appealed; and whether the district court's estoppel order was appropriate.

Because appellate jurisdiction must be found before other issues can be considered, we begin this analysis with resolution of this court's right to review the district court's ruling.

### Analysis

#### A. Appellate Jurisdiction

■ Appellee Edgewater challenges this court's jurisdiction over the district court's judgment in the "Jurisdictional Summary" of its brief:

The March 2, 1987 judgment was a judgment in Appellee's favor as to one of two counts in the Complaint. The district court expressly refused to decide the is-

sues raised by Count II of the Complaint. The judgment order contains no express determination that there is no just reason to delay as required by Fed.R.Civ.P. 54(b). The judgment is therefore not final.

Following Edgewater's analysis, therefore, we must conclude that, if the disposition is not final, it is not appealable to this court and must be dismissed.

We begin by recognizing that the district court's ruling was the granting of plaintiff's motion for summary judgment and the denial of defendant's cross-motion for summary judgment. Because that holding completely and succinctly ends the litigation, the judgment is final and appealable. *Homemakers North Shore, Inc. v. Bowen,* 823 F.2d 174, 174 (7th Cir.1987). Appellee asserts, however, that the judgment was only partial, and that the district court did not comply with the requirements of Rule 54(b) in order to allow this appeal of the first count alone.

The constitutional claim in Edgewater's second count was deprivation of property without due process of law. Alleging the same background and facts in both counts, Edgewater contends in its first count that it is entitled to a hearing before the PRRB on the second NPR issued on March 30, 1984, and in its second count that the denial of its request for a hearing constituted a taking of Edgewater's property without due process of law.

Both the magistrate and the district judge acknowledged that plaintiff had raised constitutional claims in its complaint. In his Report and Recommendation, Magistrate Balog stated, "Because I recommend the court to order the PRRB to hold a hearing on these claims, I make no findings of plaintiff's constitutional claims...."

664 F.Supp. at 1131. Judge Leinenweber's Order contains similar language: "Since the court orders the PRRB to hold a hearing on claims 5 & 13, no findings will be made on plaintiff's constitutional claims." 664 F.Supp. at 1129.

Had the district court intended to enter a partial final judgment under Rule 54(b), withholding action of one request but disposing of another, the rule would have required express findings on the matter in order to create "finality" and hence appellate jurisdiction. *Foremost Sales Promotions, Inc. v. Director, Bureau of Alcohol, Tobacco and Firearms,* 812 F.2d 1044, 1046 (7th Cir.1987). However, it was clearly not the intention of either the magistrate or the district judge to set aside that due process determination for a later date. In fact, the court's mandate of a hearing by the Board was the very due process of law being sought by plaintiff.[2]

Moreover, this case does not fall within the purview of Rule 54(b) because, as the court below implicitly recognized, it does not contain multiple claims. "[C]laims are not separate for Rule 54(b) purposes if the facts they depend on are largely the same, or, stated otherwise, if the only factual differences are minor." *Minority Police Officers Assoc. v. City of South Bend,* 721 F.2d 197, 201 (7th Cir.1983). When there is a substantial factual overlap regarding an issue that is essential to a determination of both claims, the claims are not separate. *ODC Communications Corp. v. Wenruth Investments,* 826 F.2d 509, 512 (7th Cir. 1987). Such is the case herein. Both counts of the complaint allege the same set of facts that are essential to the determination. Moreover, the claimant could not recover separately on the due process claim, since it rests on the Board's denial of its

---

**2.** Moreover, Edgewater's claim that it had been deprived of property without due process of law became moot once the district court ordered that the Board review Edgewater's claims. That hearing being the "due process" sought, the claims in controversy will be heard and will not evade review. And since the Board's decision on those claims can be further appealed if necessary, the provider still has recourse and is not yet deprived of property. *See Certified Grocers of Ill. v. Produce, Etc. Union, Local 703,* 816 F.2d 329, 331 (7th Cir.1987). Because the district court's order that the Board consider Edgewater's claims has completely eradicated the effects of the alleged violation, and because there is no reasonable expectation that the alleged violation will recur, the issue of loss of property without due process of law is no longer "live," and therefore is moot. *See County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979).

jurisdiction. *See Minority Police Officer Assoc.,* 721 F.2d at 200, citing *Local P–171, Amalgamated Meat Cutters v. Thompson Farms Co.,* 642 F.2d 1065, 1070 (7th Cir. 1981) (claims cannot be separate if the claimant could not recover separately on each claim). The district court did not consider the issues segregable, and we agree. There was thus no need for meeting the Rule 54(b) requirements.

However, our jurisdictional issue is not yet settled. Not only did the district court make a summary judgment determination; it also ordered the PRRB to hold a hearing on Edgewater's claims. We *sua sponte* must question whether the district court's mandate to the Board was a final and appealable determination. *See Clift v. International Union, U.A.W.,* 818 F.2d 623, 626 (7th Cir.1987).

This court has recently determined that, although an order compelling arbitration is ordinarily not final because much remains to be done, it may be final if it terminates all proceedings in the district court. *Soo Line Railroad Company v. Escanaba & Lake Superior Railroad Company,* 840 F.2d 546, 548 (7th Cir.1988) (district court granted summary judgment but also ordered arbitration of certain claims). We clarified a distinction between a court's *order* compelling arbitration and its *remand* of the case for arbitration in *United Steelworkers v. Aurora Equipment Co.,* 830 F.2d 753 (7th Cir.1987), which found that the district court's remand to the agency for further proceedings was not a final judgment for purposes of appeal.

> But we think it possible to distinguish between an order to arbitrate and a remand to the arbitrator, having due regard for the advisability of minimizing appeals that disrupt and delay arbitrations. The order to arbitrate thrusts the defendant into a forum not of his choice, for what may prove to be protracted and costly proceedings; and the merits of the order are independent of what those proceedings might bring to light. Such an order is different from an order of remand designed (as in this case) to clarify the record before judicial review of the arbitration can proceed to final judg-

ment.... The situation is no different in practical terms than if the district court had remanded an administrative order for clarification or amplification. The argument against piecemeal review is at least as strong in the arbitration context as in the administrative-review context, and we therefore conclude that the district court's order was not final.

830 F.2d at 754.

That carefully honed distinction, suitable for some circumstances, has however not created an axiom in this circuit that an order of remand is never final. For example, analysis of specific statutory provisions led this court to conclude in *Daviess County Hospital v. Bowen,* 811 F.2d 338 (7th Cir.1987) that a remand may be final under the Medicare Act. After acknowledging that an order remanding a case to an administrative agency for further proceedings is ordinarily not a "final decision" subject to immediate appeal under 28 U.S. C. § 1291, we nevertheless found that a remand to the Provider Reimbursement Review Board for further proceedings was a final decision when considered in light of the applicable Medicare statute. A thoughtful yet pragmatic examination of section 1395*oo*(f)(1) led the court to hold that the district court's order was clearly "final" as to the Secretary of Health and Human Services because the Secretary otherwise would be barred from raising this issue in any court review proceedings that follow the administrative remand.

> Appeals to district courts from PRRB orders are governed by 42 U.S.C. § 1395*oo*(f)(1), which allows the Secretary to modify those orders but provides for judicial review only if it is initiated by Medicare providers. If this case were returned to the PRRB now and the PRRB determined that a certain sum should be reimbursed in accordance with the district court's order, the Secretary would be unable to appeal the PRRB's action and therefore would be barred from presenting his claim that the Hospital has no right to any reimbursement. In other words, dismissal of this appeal would "have the practical effect of deny-

ing later review." *United Steelworkers of America v. Union Railroad Co.*, 648 F.2d 905, 909 (3rd Cir.1981). The district court's order was "final" to the Secretary because it would result in no further proceeding from which the Secretary could appeal. Accordingly, we conclude that this court has jurisdiction over this appeal under 28 U.S.C. § 1291.

811 F.2d at 342.

In the case now pending before us, the district court found for the provider and against the Secretary, and issued an *order* rather than a *remand* for further proceedings. The hearing ordered by the court concerns the merits of Edgewater's claims rather than its right to be heard on the claims. Any appeal arising from the hearing will concern those issues and will be brought as a new suit. In practical terms, the district court finally determined the specific issue of jurisdiction and returned the case to the proper forum for a determination of the provider's entitlements. We find that the district court's order was thus final to the Secretary.

Under these circumstances, we hold that the district court's summary judgment decision and order that the PRRB conduct a hearing is a "final decision" subject to immediate appeal. Therefore this appellate court has jurisdiction pursuant to 28 U.S.C. § 1291. *Accord Tallahassee Memorial Regional Medical Center v. Bowen*, 815 F.2d 1435, 1443 n. 12 (11th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1573, 99 L.Ed.2d 888 (1988).

B. *Scope of Review*

■ Now that the threshold issue of our jurisdiction is no longer in contention, our second preliminary matter concerns this court's standard of review.

Pursuant to 42 U.S.C. § 1395oo(f)(1), judicial review of a reimbursement decision by the PRRB is conducted in accordance with the Administrative Procedure Act standard of review and is based on the administrative record. Section 706 of the Act provides—

To the extent necessary to decision and when presented, the reviewing court

shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall:

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law....

5 U.S.C. § 706 (1982).

The facts herein having been stipulated, the district court found that the plaintiff provider was entitled to a judgment as a matter of law. This appellate court reviews the decisions of the lower court *de novo* as questions of law. *Daviess County Hospital v. Bowen*, 811 F.2d at 342–43. *See also Adams House Health Care v. Heckler*, 817 F.2d 587, 590 (9th Cir.1987), *vacated on other grounds*, —— U.S. ——, 108 S.Ct. 1569, 99 L.Ed.2d 885 (1988). Thus we review under the same standard followed by the district court, and proceed as if the case were an immediate appeal from a decision reached by the administrative board below. *Biloxi Regional Medical Center v. Bowen*, 835 F.2d 345, 348–49 (D.C.Cir.1987).

In construing the Medicare statute, however, a reviewing court should accord deference to the interpretation of the agency charged with the administration of the statute. *Bedford Medical Center v. Heckler*, 766 F.2d 321, 323 (7th Cir.1985); *St. Mary of Nazareth Hosp. Center v. Dept. of Health and Human Services*, 698 F.2d 1337, 1346–47 (7th Cir.), *cert. denied*, 464 U.S. 830, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983). *See also Tallahassee Memorial Regional Med. Center v. Bowen*, 815 F.2d at 1458. We defer to the decision of the Secretary (acting through the PRRB) unless it is found to be arbitrary, capricious, or not in accordance with the law. *Daviess County Hospital*, 811 F.2d at 343; *Memorial Hospital of Carbondale v. Heckler*, 760 F.2d 771, 773 (7th Cir.1985).

Nevertheless, this court has taken the position that, even though the Secretary is ordinarily given a great deal of deference in interpreting and implementing the laws that he or she is directed to administer, a lesser degree of deference is required when reviewing the Secretary's actions under the Medicare Act's reimbursement provisions. *St. James Hospital v. Heckler,* 760 F.2d 1460, 1470 (7th Cir.), *cert. denied,* 474 U.S. 902, 106 S.Ct. 229, 88 L.Ed.2d 228 (1985) (citations omitted). Furthermore, deference to the Secretary or to the Review Board must yield to the clear meaning of the statute as revealed by its language, purpose and history. *St. Francis Hospital Center v. Heckler,* 714 F.2d 872, 873 (7th Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984), citing *Southeastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979). *See also Medical Center Hospital v. Bowen,* 839 F.2d 1504, 1510 (11th Cir.1988).

## C. *The District Court's Jurisdiction*

■ According to the Secretary, the PRRB's decision that it lacked jurisdiction to address Edgewater's claim did not constitute a "final decision" for the purposes of section 1395oo(f)(1). That provision of the Medicare Act sets forth the prerequisites for judicial review of the Review Board's intermediary's determination.

A decision of the Board shall be final unless the Secretary ... reverses, affirms, or modifies the Board's decision. Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any *final decision by the Board* or of any reversal, affirmance, or modification by the Secretary is received. Providers shall also have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines (on its own motion or at the request of a provider of services as de-

scribed in the following sentence) that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received. 42 U.S.C. § 1395oo(f)(1) (emphasis added).

A "final decision" of the Provider Reimbursement Review Board is a prerequisite to federal court jurisdiction. *Appleton Memorial Hospital v. Bowen,* 814 F.2d 408, 410 (7th Cir.1987). Subsection (f)(1) provides two bases for an appeal to the district court: The "final decision" of the Board or the Secretary, and the Board's determination that it is without authority. In the latter category, the statute itself establishes a right to judicial review of the Board's determination that it lacks the authority to decide a question of law or regulations by designating that determination "a final decision": "[T]he determination shall be considered a final decision and not subject to review by the Secretary." 42 U.S.C. § 1395oo(f)(1). The Regulations reiterate the right of review:

(h) *Effect of a Board decision.* (1) The Board's determination, issued on its own motion or at the request of a provider, that it lacks authority to decide a question of law, regulations or HCFA Rulings is a final decision permitting a provider to seek judicial review with respect to the matter or matters in controversy contained in the determination, within 60 days of the date of the Board's determination.

42 C.F.R. § 405.1842. As a consequence, jurisdiction over the Board's determination that it does not have authority is clear. *See Hospital Association of Rhode Island v. Secretary of Health and Human Services,* 820 F.2d 533, 537 (1st Cir.1987).

However, jurisdiction over the Board's determination that it does not have jurisdiction has been a matter of dispute in the courts. This court reviewed the PRRB's decision that it was without jurisdiction to rule on a claim in *St. Mary of Nazareth Hospital v. Department of Health and Human Services,* 698 F.2d 1337 (7th Cir. 1983); however, the specific issue of the court's right of review was not challenged.

Other circuits have held, however, that the PRRB's determination that it lacks jurisdiction constitutes a judicially reviewable final decision. *See, e.g., Tallahassee Memorial Regional Medical Center v. Bowen,* 815 F.2d 1435, 1463 (11th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1573, 99 L.Ed.2d 888 (1988); *St. Joseph's Hospital of Kansas City v. Heckler,* 786 F.2d 848, 851 (8th Cir.1986); *Saline Community Hospital v. Secretary of Health and Human Services,* 744 F.2d 517, 520 (6th Cir. 1984); *Athens Community Hospital v. Schweiker,* 686 F.2d 989, 993–94 (D.C.Cir. 1982), *rev'd on other grounds,* —— U.S. ——, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988); *Highland District Hospital v. Secretary of Health and Human Services,* 676 F.2d 230, 233–35 (6th Cir.1982); *Cleveland Memorial Hospital v. Califano,* 444 F.Supp. 125, 128 (E.D.N.C.1978), *aff'd,* 594 F.2d 993 (4th Cir.1979). And the Supreme Court, reviewing the Board's statutory function under subsection (f)(1), stated: "It is this determination of the Board [that it is without authority to decide the matter], *or alternatively the Board's failure to act,* that triggers the right of judicial review." *Bethesda Hospital Association v. Bowen,* —— U.S. ——, 108 S.Ct. 1255, 1259–60, 99 L.Ed.2d 460 (1988).

When an administrative body declines to act for want of jurisdiction and further asserts that its determination is not open to judicial review, the party seeking redress may be left with no recourse. An Eleventh Circuit decision reflects the pragmatic concern of reviewing courts under such circumstances.

> While being deferential, we must carefully consider any agency action that potentially has the effect of barring access to the federal courts. This is especially true in light of the clear expression by Congress of its concern for efficient access to judicial review....

*Tallahassee Memorial Regional Med. Center v. Bowen,* 815 F.2d at 1458. A similar worry has been expressed by the Fourth, Sixth and D.C. Circuits.

> It appears clear to the court that the decision by the PRRB denying jurisdiction to the present case was a "final decision". Otherwise, the PRRB could effectively preclude any judicial review of its decisions simply by denying jurisdiction of those claims that it [d]eems to be non-meritorious. Such a device would obviously thwart the salutary purposes of Section 1395oo(f).

*Saline Community Hospital v. Secretary of Health and Human Services,* 744 F.2d 517, 520 (6th Cir.1984), quoting *Cleveland Memorial Hospital v. Califano,* 444 F.Supp. 125, 128 (E.D.N.C.1978), *aff'd,* 594 F.2d 993 (4th Cir.1979). *Accord Athens Community Hospital, Inc. v. Schweiker,* 686 F.2d at 993–94. The Eighth Circuit gave a statutorily based justification for holding that the Board's denial of its jurisdiction was a final decision:

> A second type of final decision ... occurs when a provider challenges the Board's determination that it has failed to satisfy the threshold requirements of section 1395oo(a). In that case, because "[t]he PRRB is empowered to decide questions relating to its own jurisdiction to grant a hearing, including issues of timeliness and amount of controversy," *Highland District Hospital v. Secretary of Health and Human Services,* 676 F.2d 230, 235 (6th Cir.1982); 42 C.F.R. § 405.1873(a), a decision rejecting a claim for failure to fulfill a threshold requirement must be a final decision for purposes of judicial review.

*St. Joseph Hosp. of Kansas City v. Heckler,* 786 F.2d at 851.

This court is in agreement with the precedential reasoning of the other circuits. Furthermore, we note that a district court's dismissal for want of jurisdiction is a final decision under 28 U.S.C. § 1291 that is appealable to a reviewing court; we can find no reason to treat the Board decision differently.[3]

---

3. *Cleveland Memorial Hospital, Inc. v. Califano,* 444 F.Supp. 125 (E.D.N.C.1978), *aff'd,* 594 F.2d 993 (4th Cir.1979) used this analogy as a justification for concluding that the Board's decision not to exercise jurisdiction was a "final decision" within the meaning of 42 U.S.C. § 1395oo(f)(1). 444 F.Supp. at 128.

We believe that the Secretary's and Board's use of the term "final decision" is more restrictive than subsection (f)(1) indicates. We agree with the D.C. Circuit's perception of that provision:

> Moreover, while the Medicare Act and, in particular, 42 U.S.C. § 1395oo(f)(1) are structured so as to limit judicial review, there is nothing in either the statute or the legislative history which suggests that such review is limited exclusively to substantive issues. Thus, if the threshold requirements of 42 U.S.C. § 1395oo(f)(1) are met, a court has jurisdiction to review a decision by the PRRB that it lacks jurisdiction to review a determination of the fiscal intermediary.

*Athens Community Hospital, Inc. v. Schweiker*, 686 F.2d at 994.

In conclusion, we hold that the PRRB's denial of its jurisdiction to act upon the provider's claims is a "final decision" that triggers the right of judicial review under section 1395oo (f)(1).

### D. *PRRB Jurisdiction*

██ The central issue in this case is the jurisdiction of the Provider Reimbursement Review Board to hear the provider's claims concerning specific reimbursement costs. The Secretary contends that Edgewater's request for a hearing was not timely filed as statutorily required, and that failure to fulfill that prerequisite results in the Board's lack of jurisdiction to conduct a hearing. The parties agree that section 1395oo (a) establishes the requirements un-

der which a provider may invoke the Board's jurisdiction. A provider may obtain a hearing before the Board with respect to the fiscal intermediary's determination of its cost report if

> (1) such provider
>
> > (A)(i) is dissatisfied with a final determination of the organization serving as its fiscal intermediary pursuant to section 1395h of this title as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such report, ...
>
> (2) the amount in controversy is $10,000 or more, and
>
> (3) such provider files a request for a hearing within 180 days after notice of the intermediary's *final determination* under paragraph (1)(A)(i)....

42 U.S.C. § 1395oo(a) (emphasis added).

The unanimous decision of the Supreme Court in *Bethesda Hospital Association v. Bowen*, —— U.S. ——, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988) is almost determinative in resolving this issue. The Court granted certiorari to resolve a conflict among the Courts of Appeal concerning the jurisdiction of the PRRB under the Medicare statute.[4] In all those cases the Board had determined that it lacked jurisdiction to review providers' claims that had been procedurally "irregular": The claims had not been included in the original cost report;

---

4. *Bethesda Hospital* considered the following cases in its review:

> Compare *Bethesda Hospital v. Secretary of Health and Human Services*, 810 F.2d 558 (CA6 1987) (case below) (finding there is no Board jurisdiction); *North Broward Hospital Dist. v. Bowen*, 808 F.2d 1405 (CA11 1987) (same), cert. pending, No. 86–1986; *Community Hospital of Roanoke Valley v. Health and Human Services*, 770 F.2d 1257 (CA4 1985) (same); *Athens Community Hospital, Inc. v. Schweiker*, 222 U.S.App.D.C. 363, 686 F.2d 989 ( [C.A.D.C.] 1982), modified, 240 U.S.App.D.C. 1, 743 F.2d 1 (1984) (same), with *Adams House Health Care v. Heckler*, 817 F.2d 587 (CA9 1987) (finding there is mandatory Board jurisdiction), cert. pending, No. 87–443; *St. Mary of Nazareth Hospital Center v. Department of Health and Human Services*, 698 F.2d

1337 (CA7 1983) (same), cert. denied, *sub nom. St. James Hospital v. Heckler*, 464 U.S. 830, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983), with *St. Luke's Hospital v. Secretary of Health and Human Services*, 810 F.2d 325 (CA1 1987) (finding there is Board jurisdiction, but that it is discretionary), and *Tallahassee Memorial Regional Medical Center v. Bowen*, 815 F.2d 1435 (CA11 1987) (finding there is jurisdiction in the situation at issue here, but not for appeals that do not involve a challenge to a regulation), cert. pending, No. 87–380.

108 S.Ct. at 1258. The Court granted certiorari in those cases. It reversed the decisions in *Bethesda Hospital* (6th Cir.) and *Athens Community Hospital* (D.C.Cir.), and vacated the other judgments. *See also University of Michigan Hospital v. Bowen*, 812 F.2d 1005 (6th Cir.1987) (PRRB lacks jurisdiction).

had been a part of that report but had not been claimed for reimbursement; or had been self-disallowed by the provider in the cost report in compliance with a Medicare regulation or policy which the provider intended to challenge before the Board. The Supreme Court found that the Board has jurisdiction to review such claims.

The Court began with the express language of section 1395oo(a), which establishes the three jurisdictional requirements for obtaining a Board hearing: (1) the provider's dissatisfaction with the intermediary's final determination of the amount of reimbursement; (2) a minimum amount in controversy; and (3) a filing deadline. At issue in *Bethesda Hospital* is the "dissatisfaction" criterion. The provider hospital had "self-disallowed" certain claims in order to comply with a Medicare regulation it intended to challenge before the Board. The Board reasoned that a provider that did not claim certain costs could not be "dissatisfied" with them and therefore could not fulfill the first requisite under section 1395oo(a). As a result, the Board determined that it lacked jurisdiction to hear Bethesda Hospital's claims. 108 S.Ct. at 1257.

The Supreme Court found that interpretation "strained" and "inconsistent with the express language of the statute," and concluded "that petitioners could claim dissatisfaction, within the meaning of the statute, without incorporating their challenge in the cost reports filed with their fiscal intermediaries." *Id.* 108 S.Ct. at 1259. Once this provider had satisfied the requisite "dissatisfaction" at issue, it fulfilled the jurisdictional requirements and obtained a right to a hearing. The Court held "that the plain language of the statute demonstrates that the Provider Reimbursement Review Board had jurisdiction to entertain this action." *Id.* 108 S.Ct. at 1260.

The Court further found that its conclusion was supported by the "language and design of the statute as a whole." *Id.* 108 S.Ct. at 1259. Thus broadening the scope of its examination, the Court considered the Board's statutorily granted authority. It noted that the Board has the power under section 1395oo(d) to review and revise *any* cost incurred by the provider during the period encompassed by that cost report, even if it had not been claimed for reimbursement. *Id.* It also has the power under subsection (f)(1) "to make the determination that it lacks the requisite authority to consider the validity of the regulation." *Id.* 108 S.Ct. at 1260. Because the Board "has a role in shaping the controversy that is subject to judicial review" when "the fiscal intermediary does not," *id.*, it is the Board rather than the intermediary which should hear the provider's challenge to the regulation at issue. *Id.* The Court ultimately concludes that the Board has jurisdiction under the unambiguous language of those provisions to review Bethesda Hospital's claims. *Id.*

This decision by the Supreme Court effectively confirms our ruling in *St. Mary of Nazareth Hospital Center v. Department of Health and Human Services,* 698 F.2d 1337 (7th Cir.), *cert. denied sub nom., St. James Hospital v. Heckler,* 464 U.S. 830, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983), *vacated by Bowen v. Adams House Health Care,* —— U.S. ——, 108 S.Ct. 1569, 99 L.Ed.2d 885 (1988), which found that the Board had jurisdiction to act upon certain reimbursement claims that had been "self-disallowed" by the provider. We based our determination on the broad authority vested in the PRRB under section 1395oo(d) "to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and *to make any other revisions on matters covered by such cost report ... even though such matters were not considered by the intermediary in making such final determination.*" (Emphasis supplied.) In light of this provision, the Seventh Circuit concluded that the Board had jurisdiction to consider such matters outside of the cost reports as the costs had been self-disallowed. 698 F.2d at 1346.

The case presently before us raises the "filing deadline" requirement rather than the "dissatisfaction" criterion of section 1395oo(a), but in many respects is remarkably similar to *Bethesda Hospital.* We begin our jurisdictional analysis with the stat-

utory language and the assumption that the ordinary meaning of that language accurately expressed the legislative purpose of the statute. *Park & Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 662, 83 L.Ed.2d 582 (1985). If the language is clear and unambiguous, a court need not look beyond the words to interpret the statute. *Meredith v. Bowen,* 833 F.2d 650, 654 (7th Cir.1987).

No party disputes that the 180–day time period for filing claims with the Board is a jurisdictional prerequisite to the Board's authority to review a claim. *St. Joseph Hospital of Kansas City v. Heckler,* 786 F.2d 848, 853 (8th Cir.1986). The dispute herein arises over which "final" notice began to toll that time limit. The Secretary and the Board insist that the "final determination" from which that time is counted is the first NPR; the district court agreed with the provider and found that the second NPR is the final one. After a complete review of both positions, we find the Secretary's interpretation of "final determination" strained and inconsistent with the express language of the statute.

It is incontrovertible that the intermediary BCBS honored Edgewater's request for reconsideration of the disallowed cost items listed in the first NPR, decided again which items to allow or to disallow, and issued a "Revised and Final Settlement of Reopened Cost Report" on March 30, 1984. This second NPR set forth the provider's right to a Board hearing if requested within 180 days of that notice. Edgewater timely and properly sent its notice of appeal to the Board.

■ These facts and the unambiguous language of section 1395*oo*(a) lead this Court to three conclusions. First, it is clear that, by its own terms, the second NPR of March 30, 1984 was "a final determination" within the meaning of 42 U.S.C. § 1395*oo*(a)(1)(A)(i). Therefore the limitations period began to run on that date. Second, because the three prerequisites of dissatisfaction, minimum amount in controversy, and timely filing have been fulfilled in appealing the second NPR, we conclude that Edgewater may obtain a hearing before the Board. Third, we hold that, since the Board has jurisdiction to review any matter covered by the cost report at issue, *see* 42 U.S.C. § 1395*oo*(d), even if that matter was an unclaimed cost, *see Bethesda Hospital,* 108 S.Ct. at 1259, it certainly has jurisdiction to review the properly claimed cost items of Edgewater Hospital.

*E. Reopening of a "Final Determination"*

■ The Secretary's position is that, if the Board is found to have jurisdiction to hear Edgewater's appeal, the only issue that the provider can bring to be heard is the one adjustment made in the second NPR on March 30, 1984. According to the appellant, the first NPR was reopened only with respect to that one cost; thus the second NPR revises only that item. Since that revision in the reimbursement amount is treated as a separate determination under the reopening provisions of the Secretary's Regulations, *see* 42 C.F.R. § 405.1889, the Secretary contends that Edgewater can obtain a hearing on that revised cost item alone. With respect to the unchanged disallowed cost items, asserts appellant, the final determination was made in the first NPR of February 15, 1984. Edgewater's appeal concerns those two unchanged items outside the 180–day appeal period of the first NPR; therefore, contends the Secretary, it has no right to a review of those claims.

The district court nevertheless held that the Board had jurisdiction to hear the two disallowed claims even though they were not revised by the intermediary.

> Edgewater had no notice that the items claimed (5 & 13) would not be revised until the second NPR of March 30, 1984 or at least until the letter of March 22, 1984, from the intermediary. Because the claims for compliance with safety codes and the outpatient clinic were included in the cost report and considered by the intermediary in its letter of March 22, 1984, it would defeat the "salutory [sic] purposes" of Section 1395*oo*(f) to begin the 180 day appeal period until

[sic] the second NPR was issued on March 30, 1984.

664 F.Supp. at 1131.

Once again we find the reasoning of the district court to be sound. Moreover, we find support for that conclusion in the Medicare Regulations and in case law.

The Regulations promulgated by the Secretary permit the reopening of an intermediary's determination.

> (a) A determination of an intermediary ... may be reopened with respect to findings on matters at issue in such determination ... by such intermediary ... on motion of such intermediary ... or on the motion of the provider affected by such determination ... to revise any matter in issue at any such proceedings. Any such request to reopen must be made within 3 years of the notice of the intermediary or Board hearing decision....

42 C.F.R. § 405.1885(a). The Medicare Intermediary Manual, HIM–13–2 § 2631, defines "reopening":

> For the purposes of this section the term "reopening" means an affirmative action taken by an intermediary ... to re-examine or question the correctness of a determination or decision otherwise final....

*See University of Cincinnati v. Secretary of Health and Human Services,* 809 F.2d 307, 319 (6th Cir.1987), *vacated on other grounds,* —— U.S. ——, 108 S.Ct. 1569, 99 L.Ed.2d 885 (1988). When a reopened determination is revised by the intermediary, "notice of such revision or revisions will be mailed to the parties with a complete explanation of the basis for the revision or revisions." 42 C.F.R. § 405.1887(a). That revision "shall be considered a separate and distinct determination," which may be appealed. 42 C.F.R. § 405.1889.

These procedures were followed by BCBS and Edgewater. Furthermore, Edgewater properly filed its appeal of the revised determination within 180 days of the second NPR. However, it sought review of two items not adjusted by BCBS in the second NPR. The Secretary insists that they are outside the scope of the Board's review.

We find that the clear language of the Regulations, when considered in light of the undisputed facts, allows Board review of the nonadjusted items. The intermediary took the following affirmative actions: It reopened the first NPR; it sent Edgewater a letter on March 22, 1984, explaining that it would not change three items but had been persuaded to allow the fourth claim; and it sent the second NPR with the revised cost reports incorporating the adjustment. That second "revised and final" determination presented a recomputed "amount of total program reimbursement" with which the provider was still dissatisfied. Since that revision was a "separate and distinct determination," it could be appealed to the Board as "a final determination." 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1889.

The intermediary acknowledged that it decided not to change three of the cost items. That decision itself was a reconsideration, "an affirmative action ... to re-examine or question the correctness of a determination or decision otherwise final." A review or revision is simply a re-examination, a looking over and studying of something "for the purpose of amending, correcting, rearranging, or otherwise improving it." Black's Law Dictionary, Fifth Ed. (West 1979). "To revise" is "to see again" or "to look back at" something; alteration is not a necessary component of a revision or a review. In this case BCBS reviewed all four items disputed by Edgewater and concluded that three costs were properly disallowed but that one could be adjusted. Because the intermediary based its revised second NPR on that review, all four "matters at issue" were properly appealed to the Board by Edgewater. Under the plain language of the reopening regulations, we find that the Board has jurisdiction to conduct a hearing on the two disallowed items with which Edgewater is still dissatisfied.

The Secretary insists, however, that the D.C. Circuit's interpretation of the reopening provisions validates his position. He urges this court to follow the analyses of

two companion cases, *Athens Community Hospital, Inc. v. Schweiker*, 743 F.2d 1 (D.C. Cir.1984) and *St. Mary of Nazareth Hospital v. Schweiker*, 741 F.2d 1447 (D.C. Cir.1984), which found that reopening revisions are issue-specific: "We take [42 C.F. R. § 405.1889] to mean that only the matters revised are open to review." 743 F.2d at 8. According to the Secretary, the district court's interpretation of reopening is too expansive: The revision of any one item could lead to a Board review of all other items in the cost report.

We find the Secretary's position to be flawed in three ways. First, it misinterprets the position of the D.C. Circuit. It is true that *Athens* limits the provider's right to be heard by the Board, but that limitation is to matters brought into contention by the provider: "The provider ... is allowed to appeal *only such adverse decisions of the intermediary.*" *Id.* at 9 (emphasis supplied). In other words, under *Athens* the provider may seek a Board hearing on those items originally claimed by the provider and denied by the intermediary.[5] If we were to follow *Athens*, therefore, as appellant suggests, we would require that the Board hear Edgewater's appeal concerning the intermediary's two adverse decisions.

The Secretary's second problem is that he relied on his misinterpretation of *Athens* in asserting that only the one revised cost is available for review by the Board. However, *Bethesda Hospital* has effectively overturned the analysis in *Athens* to the extent that *Athens* limits the Board's powers and duties. *Athens* states that, under section 1395oo(d), the Board may

> revise aspects of the reimbursement calculation not actually contested by the provider, and possibly not considered by the intermediary (because not claimed for reimbursement by the provider),

> when such revision is necessary to accommodate other PRRB revisions of matters that were claimed by the provider, decided adversely by the intermediary, and then contested by the provider to the PRRB.

743 F.2d at 9 (emphasis added). But the Supreme Court found no such restriction on the Board's right of review in section 1395oo(d).

> Section 1395oo(d), which sets forth the powers and duties of the Board once its jurisdiction has been invoked, explicitly provides that in making its decision whether to affirm, modify, or reverse the intermediary's decision, the Board can "make any other revisions on matters covered by such cost report ... even though such matters were not considered by the intermediary in making such final determination." This language allows the Board, once it obtains jurisdiction pursuant to subsection (a), to review and revise a cost report with respect to matters not contested before the fiscal intermediary. The only limitation prescribed by Congress is that the matter must have been "covered by such cost report," that is, a cost or expense that was incurred within the period for which the cost report was filed, even if such cost or expense was not expressly claimed.

108 S.Ct. at 1259. After *Bethesda Hospital*, it is clear that the Board's authority cannot be narrowly drawn, as the D.C. Circuit did in *Athens* and as the Secretary urges us to do herein.

The last flaw we find in the Secretary's argument is one of plain logic. It simply is nonsense to argue that the only matters which the provider can appeal are those actually changed by the intermediary. The very nature of a reopening contradicts that argument. A provider usually requests a

---

**5.** The D.C. Circuit attempted in *Athens* to resolve any possible inconsistency between the PRRB's power under section 1395oo(d) to consider matters not reviewed by the intermediary and its own interpretation of reopening. Toward this purpose, it concluded that the Board could revise any aspect of the reimbursement calculation, whether or not it was contested by the provider or considered by the intermediary,

"when such revision is necessary to accommodate other PRRB revisions of matters that were claimed by the provider, decided adversely by the intermediary, and then contested by the provider to the PRRB." *Athens*, 743 F.2d at 9. However, in contrast, the provider can raise only those issues already raised before the intermediary, determined that appellate court.

reopening of the intermediary's first NPR determination in order to receive more reimbursements by challenging certain disallowed costs or methods of computation. In this case, the intermediary revised one item, reimbursing Edgewater for that claim in the second NPR. It is illogical that Edgewater should seek to appeal the one decision *not adverse* to itself.

We find that the reopening was a reconsideration of all cost items challenged by the provider. The intermediary determined that it would change one item, but it also decided to leave intact the disallowance of the other costs. We hold that the second NPR of March 30, 1984 was a "final determination" under section 1395oo(a) of the Act on all four "matters in issue" as that term is used in section 405.1885 of the Regulations. Edgewater's request for a Board hearing on the matters determined under the corrected second NPR fulfills the jurisdictional prerequisites of section 1395oo(a) and properly raises the intermediary's adverse decision for review. Consequently, we affirm the district court's determination that the Board does have jurisdiction to hear Edgewater's claim on the two disallowed cost items.

### F. *Estoppel*

■ The district court Order concluded thus:

> Accordingly, the Court adopts Magistrate Balog's Report and Recommendation and also finds that the Secretary is estopped from challenging the timeliness of plaintiff's appeal due to the fact that the second NPR issued by the Secretary indicated that plaintiff could appeal that NPR within 180 days.

In applying estoppel against the Secretary, the court made these findings:

> Having reviewed the relevant caselaw and record of this case, the court concludes that the Secretary should not be entitled to benefit from the fact that the second NPR misled the plaintiff. The second NPR, like the first NPR, was entitled, "Notice of Program Reimbursement" and also provided that it was the "Revised and Final Settlement of Re-

opened Cost Report." Further, the second NPR provided that the plaintiff could write to the Board within 180 days of the second NPR for a hearing. Since plaintiff filed its appeal in accordance with this directive, the Secretary is estopped from claiming that plaintiff was required to appeal within 180 days of the first NPR. The Court agrees with plaintiff that the Secretary had an affirmative obligation to inform the plaintiff of its right to appeal the order and the relevant time period within which to do so. The plaintiff was entitled to rely on the second NPR and, therefore, timely filed an appeal of the second NPR.

664 F.Supp. at 1129.

The Secretary argues that equitable estoppel, if ever appropriate against the government, is certainly not appropriate in this case. This contention raises a question of law on the use of the doctrine of equitable estoppel. Appellate review of questions of law is plenary. *Daviess County Hospital v. Bowen*, 811 F.2d at 342–43. *See Phelps v. Federal Emergency Management Agency*, 785 F.2d 13, 16 (1st Cir.1986); *Molerio v. Federal Bureau of Investigation*, 749 F.2d 815, 820 (D.C. Cir. 1984).

It is true that, traditionally, equitable estoppel did not lie against the government. *Heckler v. Community Health Services of Crawford County*, 467 U.S. 51, 66, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); *Schweiker v. Hansen*, 450 U.S. 785, 788, 101 S.Ct. 1468, 1470, 67 L.Ed.2d 685 (1981). The Supreme Court has consistently refused to apply estoppel against the federal government, from its early decision in *Lee v. Munroe & Thornton*, 11 U.S. (7 Cranch) 366, 3 L.Ed. 373 (1813) to its most recent decisions, *Heckler v. Community Health Services of Crawford County, supra*, and *Lyng v. Payne*, 476 U.S. 926, 106 S.Ct. 2333, 90 L.Ed.2d 921 (1986). *See U.S. v. Asmar*, 827 F.2d 907, 911–12 (3rd Cir.1987); *Phelps v. Federal Emergency Management Agency*, 785 F.2d at 16–17.

In *Community Health Services*, the Court defined estoppel as "an equitable doctrine invoked to avoid injustice in partic-

ular cases" and stated certain principles of the doctrine:

> "If one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does an act ... the first person is not entitled
>
> .     .     .     .     .
>
> "(b) to regain property or its value that the other acquired by the act, if the other in reliance upon the misrepresentation and before discovery of the truth has so changed his position that it would be unjust to deprive him of that which he thus acquired." Restatement (Second) of Torts § 894(1) (1979).

467 U.S. at 59, 104 S.Ct. at 2223.

The Supreme Court has questioned whether "estoppel can ever be appropriately applied against the Government." *Community Health Services*, 467 U.S. at 66, 104 S.Ct. at 2227. The general rule is that reliance on misinformation provided by a government employee (or agent) does not provide a basis for estoppel. *Crown v. United States Railroad Retirement Board*, 811 F.2d 1017, 1021 (7th Cir.1987). However, various circuits have invoked the doctrine against the government in narrowly defined circumstances. *See Azar v. United States Postal Service*, 777 F.2d 1265, 1269 (7th Cir.1985). This court set forth its standard [6] for applying estoppel against a government agency in *Portmann v. United States*, 674 F.2d 1155 (7th Cir. 1982):

> First, the party to be estopped must know the facts. Second, this party must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has a right to believe it is so intended. Third, the party asserting estoppel must have been ignorant of the facts. Finally, the party asserting estoppel must reasonably rely on the other's conduct to his substantial injury.

674 F.2d at 1167. In addition to these traditional private law elements of the estoppel doctrine, we require that the party asserting estoppel establish that the government's action amounted to affirmative misconduct. Although the Supreme Court has not yet addressed the appropriateness of this additional element, *see Schweiker v. Hansen*, 101 S.Ct. at 1471, many circuits have required it.[7]

The party claiming estoppel has the burden of demonstrating the elements. *See Lyng v. Payne*, 476 U.S. at 935, 106 S.Ct. at 2340; *United States v. Asmar*, 827 F.2d at 912. When determining whether estoppel will lie, a district court must examine and make findings on the proof of each element of an estoppel defense. *See United States v. Asmar*, 827 F.2d at 914. In this case, the district court below stated contradictorily that the second NPR misled the plaintiff and that the plaintiff was entitled to rely on the second NPR. This analysis was misguided and erroneous.[8]

An essential element of any estoppel is detrimental reliance on the adverse party's misrepresentation. *Lyng v. Payne*, 476 U.S. at 935, 106 S.Ct. at 2340. Edgewater relied on BCBS's representations, as published in the second NPR, that an appeal could be taken within 180 days of that

---

**6.** This standard is adopted from the Ninth Circuit's requirements as presented in *TRW, Inc. v. Federal Trade Comm'n*, 647 F.2d 942, 950–51 (9th Cir.1981).

**7.** *See, e.g., U.S. v. Asmar*, 827 F.2d 907, 912 (3d Cir.1987); *Mukherjee v. INS*, 793 F.2d 1006, 1008 (9th Cir.1986); *United States v. Medico Industries, Inc.*, 784 F.2d 840, 846 n. 2 (7th Cir.1986); *Portmann v. United States*, 674 F.2d 1155, 1167 (7th Cir.1982); *Akbarin v. INS*, 669 F.2d 839, 843–44 (1st Cir.1982); *Corniel–Rodriguez v. INS*, 532 F.2d 301, 306–07 (2d Cir.1976); *Semaan v. Mumford*, 335 F.2d 704 (D.C.Cir. 1964); *Simmons v. United States*, 308 F.2d 938 (5th Cir.1962).

**8.** The district court also stated that "the Secretary had an affirmative obligation to inform the plaintiff" of the method of appeal. We are puzzled by the intended import of that comment. An "affirmative obligation" cannot be construed to be the "affirmative misconduct" requirement of *Portmann*. More importantly, however, the Medicare statute, regulations, and Reimbursement Manual clearly covered the policies in question. As we have discussed above, the plain reading of those statements allows a provider to appeal from the second NPR. The Secretary had no duty to inform further.

notice concerning the intermediary's determinations. The intermediary neither misled the provider nor gave it an erroneous interpretation of federal regulations. *See Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). There had been no procedural default by the provider that had been improperly precipitated by the intermediary. *See Schweiker v. Hansen, supra; Phelps v. Federal Emergency Management Agency,* 785 F.2d at 18. There is no record evidence that the government, through its agents, falsely induced the provider to take any action adverse to itself. The intermediary's conduct was proper and its advice sound. We find no evidence of "affirmative misconduct" by BCBS.

Since the second NPR was not misleading, Edgewater's reliance on it was reasonable and not detrimental to the provider. *See Community Health Services,* 467 U.S. at 59, 104 S.Ct. at 2223; *Wilber National Bank v. United States,* 294 U.S. 120, 124–25, 55 S.Ct. 362, 364, 79 L.Ed. 798 (1935). Whatever detriment the provider may claim to have suffered comes from the PRRB's decision that it did not have jurisdiction to hear Edgewater's appeal. However, the Board had not led the hospital to rely or to change its position for the worse. Furthermore, its narrow reading of the regulations, which led to the Board's denial of its jurisdiction, was a misinterpretation rather than a misrepresentation. Thus the provider cannot claim detriment from the conduct of the Board. Indeed, the provider cannot claim detriment at all, since judicial review of the Medicare statutes and regulations has led both the court below and this court to the conclusion that the provider's reading of those provisions is the correct one.

We conclude that the prerequisites of the estoppel doctrine have not been satisfied and that the facts of this case do not warrant application of equitable estoppel against the Secretary. *See Matter of Penn Central Transportation Co.,* 831 F.2d 1221, 1231 (3d Cir.1987); *Azar v. U.S. Postal Service,* 777 F.2d at 1269–70; *United States v. Bob Stofer Oldsmobile–Cadillac,* 766 F.2d 1147, 1151–52 (7th Cir.1985). Therefore we hold that the district court erred in finding that estoppel against the Secretary was appropriate in these circumstances.

### Conclusion

Having found that the courts and the Provider Reimbursement Review Board had jurisdiction to hear the issues presented to each body, and having found further that there are no genuine issues as to any material fact, Fed.R.Civ.P. 56(c), we affirm the district court's order granting the plaintiff's motion for summary judgment and denying the Secretary's cross-motion. We also find proper the district court's mandate that the Board conduct a hearing on the provider's claims. *See* 5 U.S.C. § 706(1).

Nevertheless, having found that the district court erred in applying the doctrine of estoppel to the federal government's Secretary of Health and Human Services, we reverse and vacate the district court's order of estoppel.