### DELAWARE COUNTY MEMORIAL HOSPITAL

v.

### Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, et al.

### Civ. A. No. 89–7151.

United States District Court, E.D. Pennsylvania.

June 27, 1991.

---

1. Record document no. 53.

2. Record document no. 49.

3. Record document no. 55.

4. Record document no. 57.

5. Record document no. 62.

Diane G. Wiener, Duane, Morris & Heckscher, Philadelphia, PA, for plaintiff.

Linda L. Shafer, U.S. Dept. of Justice, Philadelphia, PA, Linda A. Ruiz, Office of General Counsel/Health Care Financing Div., Dept. of Health & Human Services, Baltimore, MD, Marilyn May, U.S. Attorney's Office, Philadelphia, PA, for defendants.

### MEMORANDUM and ORDER

SHAPIRO, District Judge.

### I. INTRODUCTION

Before the court are cross-motions for summary judgment. Plaintiff Delaware County Memorial Hospital ("DCMH") filed a complaint for declaratory relief and money allegedly due under the health costs reimbursement program established under Title XVIII of the Social Security Act ("Medicare"). 42 U.S.C. § 1395 *et seq.* In 1979–80, plaintiff settled uninsured malpractice claims for $1 million; plaintiff seeks reimbursement for a portion of the settlement ($464,000), plus interest, attorney's fees and costs. Defendants, in their cross-motion for summary judgment, contend that this court should affirm the administrative board's denial of jurisdiction over plaintiff's claim for failure to file a timely administrative appeal and dismiss plaintiff's complaint. In the alternative, defendants request that the court remand the action to the administrative board for a hearing on the merits.

For the reasons stated below, the court affirms the administrative board's denial of jurisdiction over plaintiff's claim as untimely filed and dismisses the complaint.

### II. STATUTORY AND REGULATORY BACKGROUND

Under the Medicare program, health care providers such as DCMH may obtain reimbursement for costs of treating Medicare patients. After the close of its fiscal year, a health care provider submits a cost report showing costs incurred during the year and the portion of those costs properly allocated to Medicare under the governing rules and regulations.

■ The cost report is submitted to a fiscal intermediary, an agent of the Secretary of the Department of Health and Human Services ("the Secretary"). The fiscal intermediary audits the cost report to determine the amount of Medicare reimbursement for the year, then provides a Notice of Amount of Program Reimbursement ("NPR"). *See* 42 U.S.C. § 1395h; 42 C.F.R. §§ 421.103; 413.20; 413.60; 405.1803. The fiscal intermediary is bound by the Secretary's regulations and instructions issued by the Health Care Financing Administration ("HCFA"). *See* 42 C.F.R. § 421.100(h); *see also Bethesda Hospital Assoc. v. Bowen,* 485 U.S. 399, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988).

A provider dissatisfied with the NPR may appeal to the Provider Reimbursement Review Board ("PRRB" or "the Board"), within 180 days if the amount in controversy is $10,000 or more. 42 U.S.C. § 1395oo (a). The PRRB may affirm, modify or reverse a final determination of the fiscal intermediary and may "make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the intermediary in making such final determination." § 1395oo (d). *See also* 42 C.F.R. § 405.1841. The PRRB decision is final unless the Secretary reverses, affirms or modifies the decision. 42 U.S.C. § 1395oo (f)(1).

An NPR "may be reopened with respect to findings on matters at issue in such determination or decision" on motion of the provider, the fiscal intermediary, PRRB or Secretary. *See* 42 C.F.R. § 405.1885(a). A request for reopening must be made within three years. Where a revision is made pursuant to a reopening, "such revision shall be considered a separate and distinct determination or decision." 42 C.F.R. § 405.1889 (citing to 42 C.F.R. §§ 405.1811, 1835, 1875 and 1877).

A provider can obtain judicial review of "any final decision of the [PRRB or Secretary] ... by a civil action filed within 60 days of receipt of notice" of the final decision. A provider also can seek judicial review of any action of a fiscal intermediary involving a question of law or challenge to a regulation whenever the PRRB determines, on its own

motion or by motion of the provider, that the PRRB is without authority to decide the question. 42 U.S.C. § 1395oo (f)(1).

## III. FACTS

. DCMH is a general hospital, licensed and approved to provide health care service by the Commonwealth of Pennsylvania,. and qualified to provide service to Medicare patients under Part A of the Medicare program. DCMH's fiscal year (or cost reporting year) is from July 1 to June 30. Its fiscal intermediary is Aetna Life & Casualty ("Aetna"), of Fort Washington, Pennsylvania.

In the 1979–80 fiscal year, DCMH settled for $1 million a malpractice action brought on behalf of three patients born in 1957, 1959 and 1967, respectively, for injuries suffered at birth ("the $1 million uninsured settlement"). DCMH had no malpractice insurance for the injuries suffered by the patients born in 1957 and 1959 because charitable institutions were then immune from liability. In 1967, DCMH had insurance coverage in an amount that was reasonable at that time but insufficient to cover its liability in 1980. It is unclear when the malpractice action was filed, but it is undisputed that the settlement amount was paid to non-Medicare patients.

In submitting its 1980 cost report, DCMH informed Aetna that it used the "utilization method" to calculate the reimbursement due for its malpractice insurance premium of $336,070 and the $1 million uninsured settlement. See Letter of October 23, 1980, the Administrative Record ("A.R.") at 14. The "utilization method" reimburses a health care provider according to the percentage of total patient bed-days used by Medicare patients during the fiscal year.

On July 1, 1979, a new regulation for allocating malpractice costs took effect. Under this regulation, Medicare would reimburse malpractice insurance costs according to the percentage of total malpractice claims paid which are paid to Medicare patients ("the 1979 Malpractice Rule"). A non-insured claim or claim in excess of insurance coverage limits would be paid only if the claim actually arose from treatment of a Medicare patient. See 42 C.F.R. § 405.452(a)(1)(ii) (1984) (repealed). In its letter of October 23,

1980, DCMH informed Aetna that it sought reimbursement under the former utilization method "in order to preserve our right to appeal" and challenge the 1979 Malpractice Rule. A.R. at 14.

Aetna, applying the 1979 Malpractice Rule, disallowed DCMH's calculation of reimbursement for both the malpractice premium and the $1 million uninsured settlement in the NPR dated March 20, 1981 (the "1981 NPR"). See A.R. at 26, 36, 47. DCMH appealed the 1981 NPR to the PRRB within 180 days by joining other health care providers in a group appeal, under 42 U.S.C. § 1395oo (b), challenging the 1979 Malpractice Rule as applied to reimbursement for malpractice insurance costs. In that group appeal, DCMH claimed reimbursement of $141,295, that portion of its malpractice insurance premium to which it was entitled under the utilization method. See A.R. at 45. In the group appeal, DCMH did not claim reimbursement for any portion of the $1 million uninsured settlement.

The PRRB certified that it lacked the authority to decide whether the 1979 Malpractice Rule was valid, and directed expedited judicial review under 42 U.S.C. § 1395oo (f)(1). The Court of Appeals for the Third Circuit, affirming and adopting the opinion of the district court, held invalid the application of the 1979 Malpractice Rule to reimbursement for malpractice insurance costs. See Abington Memorial Hospital v. Heckler, 576 F.Supp. 1081 (E.D.Pa.1983), aff'd., 750 F.2d 242 (3d Cir.1984), cert. denied, 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 149 (1985).

The Court of Appeals recognized that the Medicare statute removes jurisdiction from the federal courts over claims for reimbursement arising under the statute except as allowed by 42 U.S.C. § 1395oo (f). Section 1395oo requires exhaustion of administrative remedies before court review. Accordingly, the Court of Appeals limited relief "to the individual claims of appellees for reimbursement that were considered by the [PRRB]," i.e., "malpractice insurance costs incurred during the fiscal year ending June 30, 1980." The Court of Appeals remanded to the PRRB to award the appellees "reimburse-

ment in accordance with our decision." 750 F.2d at 244.

Aetna then sent DCMH a "Notice of Reopening," dated October 16, 1986. "To reimburse malpractice insurance costs as an administrative cost as per the Federal Court Order on the Abington Memorial Hospital cost issue." *See* A.R. at 16. Aetna informed DCMH that the reopening was pursuant to 42 C.F.R. § 405.1887 (providing for notice to a provider of a reopening). That same date, Aetna sent DCMH a revised NPR recalculating the reimbursement for the malpractice insurance premium. *See* A.R. at 60. The revised NPR left unchanged that part of the 1981 NPR denying reimbursement for any portion of the $1 million uninsured settlement.

On April 8, 1987, DCMH filed a request for a PRRB hearing on the revised NPR's denial of reimbursement for the $1 million uninsured settlement. *See* A.R. at 19–22. On August 3, 1989, the PRRB denied jurisdiction because the appeal was untimely filed. *See* A.R. at 1–2. Plaintiff filed this action on October 4, 1989.

## IV. STANDARD OF REVIEW

Review of a decision of the PRRB is in accordance with the Administrative Procedure Act, 5 U.S.C. § 702, *et seq.*, and based on the administrative record. 42 U.S.C. § 1395*oo* (f)(1). Because the material facts are not in dispute, the sole issue to be determined is whether the decision of the PRRB to refuse jurisdiction was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). *See Lawrenceville Nursing Home, Inc. v. Schweiker*, 528 F.Supp. 1370, 1375 (D.N.J.1982), *aff'd* 696 F.2d 983 (3d Cir.1982).

## V. DISCUSSION

■ DCMH did not appeal Aetna's denial of reimbursement for the $1 million uninsured settlement to the PRRB within 180 days of the original 1981 NPR. DCMH, by joining the group appeal resulting in the *Abington* decision, appealed only the denial of reimbursement for its malpractice insurance premium.

A provider must appeal to the PRRB within 180 days after notice of the "final determination" of its fiscal intermediary. *See* 42 U.S.C. § 1395*oo* (a). The statute provides that:

Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by [the PRRB] ... if—

(1) such provider—

(A)(i) is dissatisfied with a final determination of ... its fiscal intermediary ... as to the amount of total program reimbursement due the provider ...

(2) the amount in controversy is $10,000 or more, and

(3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination under paragraph (1)(A)(i)....

42 U.S.C. § 1395*oo* (a); *see also* 42 C.F.R. §§ 405.1835, 405.1841.

DCMH argues that the plain language of the statute grants it a right of appeal to the PRRB. Defendants concede that the revised NPR constituted a "final determination" for purposes of § 1395*oo* (a)(1)(A), and that the amount in controversy exceeds $10,000. Because the statute requires only that a provider appeal within 180 days of a "final determination," DCMH contends that it has complied with the statute because the revised NPR started a new 180–day appeal deadline as to *all* items encompassed by the original 1980 cost report (or at least as to items in the 1980 report closely related to those adjusted in the revised NPR).

Defendants argue that the revised NPR is an appealable "final determination," but is "separate and distinct" from the 1981 NPR (*see* 42 C.F.R. § 405.1889), so that plaintiff's right to appeal is similarly separate, distinct, and limited to the one item timely appealed from the 1981 NPR and changed in the revised NPR.

[3] The starting point for interpreting a statute is its language. *James v. O'Bannon*, 715 F.2d 794, 800 (3d Cir.1983), *cert. denied sub nom. James v. Cohen*, 470 U.S. 1050, 105

S.Ct. 1746, 84 L.Ed.2d 812 (1985). The Medicare statute does not, by its express language, limit the PRRB's jurisdiction to hear an appeal from a "final determination" to specific cost items. But neither does the statute expressly define the permissible scope of an appeal to the PRRB where successive "final determinations" are made. The plain language does not resolve the issue before us.

In preparing and issuing the revised NPR, Aetna was complying with and limited to the order of remand from the Court of Appeals in *Abington.* The Court of Appeals expressly limited the relief to the appellees in that case, including DCMH, and to reimbursement for malpractice insurance costs for the fiscal year 1980, because administrative remedies had been exhausted as to those costs only. "The specific relief ... is limited to the individual claims of appellees for reimbursement that were considered by the [PRRB]." 750 F.2d at 244. A district court has no jurisdiction over claims arising under Medicare for reimbursement, "except to the extent allowed" under 42 U.S.C. § 1395*oo* (f). That section "established the [PRRB] as the forum of first resort, and requires exhaustion of one's remedies there before court review is appropriate." *Id.*

Plaintiff failed to seek a hearing before the PRRB—the "forum of first resort"—regarding Aetna's denial of reimbursement for the $1 million uninsured settlement within 180 days of the 1981 NPR. DCMH was on notice from the time it joined the group appeal in *Abington* that the outcome of that appeal would not lead to a review or revision of Aetna's denial of reimbursement for the $1 million uninsured settlement because the *Abington* group appeal concerned reimbursement of malpractice insurance costs only. DCMH did not separately appeal Aetna's denial of reimbursement for the $1 million uninsured settlement to the PRRB, nor request reopening from Aetna within three years of the 1981 NPR.

There was no pending DCMH action or claim regarding the $1 million uninsured settlement when the group appeal in *Abington* was filed or at any time thereafter. DCMH had no legitimate or reasonable expectation that Aetna's denial of reimbursement for the $1 million uninsured settlement remained open pending the *Abington* decision. DCMH, as a party to the group appeal in *Abington,* knew the appeal related only to reimbursement of malpractice insurance costs; reimbursement for amounts paid for uninsured malpractice claims was not before the court.

■ DCMH argues that its October 23, 1980 letter submitting the 1980 cost report, alerted Aetna that DCMH claimed reimbursement for the $1 million uninsured settlement "in order to preserve our right to appeal." A.R. at 14. The letter addressed to the fiscal intermediary was not an appeal to the PRRB *from* the determination of the fiscal intermediary under 42 U.S.C. § 1395*oo* (a); the letter did not toll the 180–day limit for appeal to the PRRB.

■ DCMH also argues that because the 1979 Malpractice Rule barred reimbursement of amounts paid to non-Medicare patients for malpractice claims, it would have been futile to appeal Aetna's denial of reimbursement for the $1 million uninsured settlement until *Abington* held the rule invalid. Plaintiff impliedly argues that the 180–day appeal limitation can be equitably waived. However, an appeal filed within 180 days is a jurisdictional prerequisite to PRRB review. *See Abington,* 750 F.2d at 244. *See also Alacare Home Health Services, Inc. v. Sullivan,* 891 F.2d 850, 856 (11th Cir.1990); *Edgewater Hospital, Inc. v. Bowen,* 857 F.2d 1123, 1134 (7th Cir.1988), *modified,* 866 F.2d 228; *St. Joseph's Hospital of Kansas City v. Heckler,* 786 F.2d 848, 853 (8th Cir.1986).

■ Assuming that the 180–day deadline can be waived if appeal to the PRRB would be futile, plaintiff has failed to establish that an appeal of Aetna's denial of reimbursement for the $1 million uninsured settlement within 180 days of the 1981 NPR would have been futile. Even though the PRRB is constrained to follow a regulation as written, the PRRB can certify the issue in dispute for judicial review under 42 U.S.C. § 1395*oo* (f)(1). Appealing a regulation to the intermediary is futile, but appealing to the PRRB is not futile because, "The Board has a role

in shaping the controversy that is subject to judicial review; the fiscal intermediary does not." *Bethesda*, 485 U.S. at 407, 108 S.Ct. at 1260.

If the PRRB denied or dismissed the appeal, DCMH could have appealed the PRRB's denial or dismissal to district court under 42 U.S.C. § 1395oo (f)(1). If the success of such an appeal hinged on the outcome in *Abington*, the PRRB or district court could have stayed decision pending the outcome of *Abington*.

In arguing that the revised NPR reopens the entire 1980 cost report (or at least related items) for appeal to the PRRB, DCMH relies principally on *Bethesda; Edgewater Hospital;* and *Minnesota Hosp. Assoc. v. Bowen,* 703 F.Supp. 780 (D.Minn.1988).

*Bethesda* also involved the 1979 Malpractice Rule. The petitioner in *Bethesda* appealed to the PRRB within 180 days of the NPR, but the PRRB declined jurisdiction because the provider had not challenged application of the 1979 Malpractice Rule in the cost report submitted to its intermediary. The PRRB ruled that the provider was not "dissatisfied with a final determination of the ... fiscal intermediary" under 42 U.S.C. § 1395oo (a)(1)(A), because the provider had not challenged the 1979 Malpractice Rule in the cost report. 485 U.S. at 402, 108 S.Ct. at 1257. The Supreme Court held that the plain language of the statute allowed a "dissatisfied" provider to appeal the applicability of a regulation in the first instance to the PRRB.

DCMH argues that the Court's holding in *Bethesda* means that "final determination" should be broadly construed. But the issue before the Supreme Court was whether a provider was "dissatisfied" if the provider had not made a claim for reimbursement in the cost report to the fiscal intermediary. The provider in *Bethesda* filed a *timely* appeal to the PRRB from the fiscal intermediary's NPR. Here the claim was made in the cost report to the fiscal intermediary, but the fiscal intermediary's NPR was *not* timely appealed to the PRRB, except as to reimbursement for malpractice insurance premiums.

In *Edgewater Hospital,* the provider sought reconsideration of four items disallowed in its NPR. After reviewing the four items, the intermediary issued a revised NPR granting the provider reimbursement for only one of the four items. The provider then appealed to the PRRB regarding two of the three remaining disallowed items within 180 days of the revised NPR. The PRRB ruled that it had no jurisdiction because the provider had failed to file an appeal of those two items within 180 days of the *first* NPR. 857 F.2d at 1125. The government argued that the provider could appeal only the one item actually changed by the revised NPR. 857 F.2d at 1134-36.

The Seventh Circuit ruled that it was simply "nonsense" to suggest that the provider could appeal only the one item adjusted in its favor. 857 F.2d at 1136. Because the provider had no notice that the challenged items still under consideration by the intermediary would not be changed in the provider's favor until it received the revised NPR, the 180-day appeal deadline as to those items ran from the date of the revised NPR. 857 F.2d at 1134.

*Edgewater* relied in part on the Supreme Court's statement in *Bethesda* that 42 U.S.C. § 1395oo (d), "allows the Board, once it obtains jurisdiction pursuant to [§ 1395oo(a)], to review and revise a cost report with respect to matters not contested before the fiscal intermediary." 485 U.S. at 406, 108 S.Ct. at 1259. The court in *Edgewater* reasoned that, because the PRRB has the broad authority to hear cost items initially uncontested before the fiscal intermediary, the Board has jurisdiction to hear "properly claimed" items. 857 F.2d at 1134, *modified* 866 F.2d 228.

In *Minnesota Hosp. Assoc. v. Bowen,* the court held that upon receipt of a revised NPR, a provider may timely appeal any item originally contained in the cost report, not only those items adjusted or actively reviewed by the intermediary in preparing a revised NPR. 703 F.Supp. at 785. *Bethesda* and *Edgewater* were cited in support of the court's decision.

The holding of *Minnesota* is an unwarranted extension of *Bethesda* and *Edgewater*.

Neither *Bethesda* nor *Edgewater* suggest that a provider can appeal an item rejected in an original NPR and not appealed to the PRRB within 180 days, merely because the intermediary issues an NPR revising an item properly challenged and changed as a result of judicial review. The Supreme Court in *Bethesda* noted that the discretionary authority of the PRRB under 42 U.S.C. § 1395*oo* (d), to modify items uncontested before the fiscal intermediary, applies *after* the PRRB obtains jurisdiction under § 1395*oo* (a). 485 U.S. at 406, 108 S.Ct. at 1259. The Court did not suggest that a provider has a *right* to obtain PRRB jurisdiction over a claim where the provider has failed to comply with the jurisdictional requirement of timely appeal.

The Seventh Circuit in *Edgewater* rejected the government's argument that a revised NPR created a right to appeal only an item actually changed by the fiscal intermediary, but the court did not hold that the provider could appeal *any* item from the original cost report. The court held only that the provider could appeal those items initially protested to the fiscal intermediary and still under review pending the revised NPR. The provider in *Edgewater* had no notice that the protested items would be "finally determined" against it until the fiscal intermediary issued the revised NPR. If the 180–day deadline for appeal ran while the provider tried to resolve its dispute with the fiscal intermediary, the provider would have little incentive to first seek reconsideration by the intermediary, and appeals to the PRRB would increase.

DCMH had notice that the revised NPR would not address reimbursement of the $1 million uninsured settlement because DCMH failed to appeal Aetna's denial of reimbursement for the $1 million uninsured settlement after the 1981 NPR was issued. The DCMH appeal in *Abington* did not include a claim for reimbursement of all or part of the $1 million uninsured settlement. Even if DCMH is correct that the *Abington* decision made possible a favorable ruling on reimbursement of the $1 million uninsured settlement, DCMH had not filed a timely appeal regarding settlement reimbursement, and can not now benefit from the *Abington* ruling to claim reimbursement.

■ The revised NPR issued by Aetna permitted appeal only of the specific items reviewed by Aetna pursuant to the order of remand by the Court of Appeals in *Abington*. The revised NPR was a "separate and distinct" final determination, creating separate and distinct rights of appeal. *See* 42 C.F.R. § 405.1889. *See also South Miami Hospital v. Bowen*, 658 F.Supp. 544 (S.D.Fla.1987) (decided before *Bethesda* and *Edgewater*, but holding that a revised NPR creates appeal rights limited to the subject of the revised NPR).

A cost report contains numerous items. The provider must specify the items it appeals to the PRRB. *See* 42 C.F.R. § 405.-1841. To permit an NPR, revising certain items by court order, to reopen an entire cost report for appeal of any item or even "related" items, would nullify the 180–day appeal deadline and violate the jurisdictional requirements of the statute. A provider could keep an entire cost report open indefinitely by successfully appealing one item, awaiting a revised NPR, appealing another item, and so on. Neither *Bethesda* nor *Edgewater* stand for such a proposition; *Minnesota* relied on those cases but is not binding on this court.

DCMH also cites *Oregon v. Bowen*, 854 F.2d 346 (9th Cir.1988), in which a provider sought review of the fiscal intermediary's refusal to reopen the provider's cost report on certain items. The PRRB, contending the refusal of the intermediary was not a "final determination," denied jurisdiction. The Ninth Circuit held that an intermediary's refusal to reopen constituted a final determination, from which a provider could seek review by the PRRB. The court did not address the issue presented here.

## VI. CONCLUSION

The PRRB refused jurisdiction to consider the appeal of DCMH because it was untimely filed. Because we affirm the decision of the PRRB, it is unnecessary to consider the merits of plaintiff's claim for reimbursement. An appropriate Order follows.

246

## ORDER

AND NOW, this 27th day of June, 1991, upon consideration of Plaintiff's Motion for Summary Judgment, and Defendants' Cross–Motion for Summary Judgment, and plaintiff's reply, and after oral argument, and for the reasons stated in the accompanying memorandum, it is *ORDERED* that:

1. Plaintiff's Motion for Summary Judgment is *DENIED.*

2. Defendants' Cross–Motion for Summary Judgment is *GRANTED.* The August 3, 1989 decision of the Provider Reimbursement Review Board denying jurisdiction over plaintiff's administrative appeal is *AFFIRMED.* This action is *DISMISSED.*