**UNIVERSITY OF CINCINNATI,**
Plaintiff,

v.

**Donna SHALALA, Secretary of Health
and Human Services, Defendant.**

No. C–1–94–409.

United States District Court,
S.D. Ohio,
Western Division.

June 9, 1995.

Peter Leroux Cassady, Beckman, Weil, Shepardson & Faller, Cincinnati, OH, for plaintiff University of Cincinnati dba University Hosp.

Donetta Donaldson Wiethe, U.S. Dept. of Justice, Cincinnati, OH, for defendant Donna Shalala, Secretary of Health and Human Services.

### ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon the October 14, 1994, motion for summary judgment filed by plaintiff, the University of Cincinnati Hospital (UC Hospital) and the December 12, 1994, cross-motion for summary judgment filed by the defendant, Donna Shalala, Secretary of the U.S. Department of Health and Human Services (the Secretary). (Doc. Nos. 7 and 10). In accordance with a stipulated schedule between the parties and this court, UC Hospital filed its response in support of its motion for summary judgment and in opposition to the Secretary's cross-motion on January 17, 1995. (Doc. No. 12). After receiving appropriate leave from this court, the Secretary filed a reply to UC Hospital's response. (Doc. No. 16). The opinion of the court is set forth herein.

### I. FACTUAL BACKGROUND

1. Plaintiff, the University of Cincinnati Hospital (UC Hospital), is a provider, pursuant to the federal Medicare Program, 42 U.S.C.A. § 1395, et seq.[1], administered by the Health Care Financing Administration (HCFA) of the U.S. Department of Health and Human Services (HHS). (Doc. Nos. 7 at 2 and 10 at 1).

2. As a Medicare Provider, the UC Hospital provides health care services to Medicare beneficiaries and, in turn, receives fiscal reimbursement through its Medicare fiscal intermediary, the Community Mutual Insurance Co.[2] (intermediary). (Doc. Nos. 7 at 3 and 10 at 8).

3. The UC Hospital submitted timely[3] annual cost reports to its intermediary for fiscal years (FYs) 1986 through 1989.[4] (Doc. Nos. 7 at 3 and 10 at 16).

4. The intermediary subsequently issued its notice of program reimbursement (NPR)[5] for the UC Hospital, pursuant to the following chronology:

 a. On June 16, 1987, the intermediary issued its NPR respecting the UC Hospital's FY 1986 annual cost report;

 b. On September 29, 1988, the intermediary issued its NPR regarding the FY 1987 cost report;

 c. On August 31, 1989, the intermediary released the NPR in relation to the FY 1988 cost report;

---

1. Congress has not officially codified Title XVIII of the Social Security Act, Pub.L. No. 89–97, 79 Stat. 286, 291 (1965), as amended. However, for reference efficiency purposes, this opinion, hereinafter, cites to the designated Medicare program unofficial (U.S.C.A.) code section.

2. The Community Mutual Insurance Co. is the Medicare fiscal intermediary for the Cincinnati, Ohio, area, which encompasses UC Hospital. (Doc. No. 10 at 8).

3. The timeliness of such submissions was acknowledged by both parties. (Doc. Nos. 7 at 3 and 10 at 16).

4. See 42 C.F.R. Part 413, Subpart B (Accounting Records and Reports).

5. See 42 C.F.R. § 405.1803 (Intermediary determination and notice of amount of program reimbursement).

d. On October 9, 1990, the intermediary issued its NPR regarding the FY 1989 cost report.

(Doc. Nos. 7 at 14 and 10 at 2).

5. On March 15, 1990, the intermediary issued a cost reports notice of reopening regarding the UC Hospital's FYs 1986 through 1989 annual cost reports.[6] (Doc. No. 7 at 5). The reopening was "to effectuate changes in payment policy for direct graduate medical education costs [GME] in accordance with 42 [C.F.R. Parts] 405, 412 and 413 published in the *Federal Register* on September 29, 1989."[7] (Doc. No. 7 at 5).

6. On July 30, 1993, the intermediary released its revised NPRs for the FYs 1986 through 1989 annual cost report submissions. (Doc. No. 7 at 14).

a. The intermediary's revised NPRs made alterations to the average per resident amount, for purposes of GME reimbursement. (Doc. No. 10 at 2).

b. The revised NPRs also adjusted UC Hospital's aggregate diagnostic related group (DRG) reimbursement amount. (Doc. No. 7 at 6).

c. The revised NPRs did not adjust UC Hospital's indirect medical education (IME) payment amounts. (Doc. No. 7 at 6).

7. On August 16, 1993, the UC Hospital requested that the intermediary reopen the FY 1986 through 1989 cost reports "in order to adjust [IME] payments." (Doc. No. 7, Ex. 5).

8. On September 14, 1993, the intermediary wrote to the UC Hospital, indicating that the intermediary would not reopen the FY 1986 through 1988 cost reports. Specifically, the intermediary deemed the UC Hospital's re-

opening request to be untimely, in that such request was not "within [three] years of the date of [initial NPRs]."[8] (Doc. No. 7, Ex. 6). The intermediary did reopen the FY 1989 cost report submission, deeming such reopening request for that fiscal year to be timely. (Doc. No. 7, Ex. 6).

9. On January 25, 1994, the UC Hospital submitted to the Provider Reimbursement Review Board (PRRB) an "appeal of intermediary's denial to reopen cost reports for [FYs 1986 through 1988]." (Doc. No. 7, Ex. 7). Within ¶ 4.1 of the submission, the UC Hospital requested "that the Board reverse the [i]ntermediary's failure to adjust the [p]rovider's IME costs for [FYs 1986 through 1989], or, in the alternative, to mandate the [i]ntermediary to reopen the [FYs 1986 through 1989] cost reports in order to effectuate the IME adjustments necessitated by the [i]ntermediary's final direct medical education adjustments." (Doc. No. 7, Ex. 7 at ¶ 4.1).

10. On April 13, 1994, the PRRB denied jurisdiction over the submission. (Doc. No. 7, Ex. 8). In pertinent part, the PRRB held:

In this case, the [p]rovider filed an appeal within 180 days from the date of the refusal of the [i]ntermediary to reopen the cost report; but more than 180 days after the [NPR] had been issued. The Board finds that it does not have jurisdiction over the [i]ntermediary's refusal to report the cost report[s]. The Board holds that 42 C.F.R. § 405.1885(c) governs the review of the denial to reopen a cost report. Section 405.1885(c) states that jurisdiction for reopening a determination rests exclusively with the administrative body that rendered the last determination. Since the [i]ntermediary was the administrative body that

---

6. *See* 42 C.F.R. § 405.1885 (Reopening a determination or decision).

7. On September 29, 1989, HCFA issued a final rule to "set forth changes in Medicare policy concerning payment for the direct graduate medical education costs of providers associated with approved residency programs in medicine, osteopathy, dentistry, and podiatry." 54 Fed.Reg. 40,286 (1989). According to HCFA, "[t]hese changes implement [§] 1886(h) of the Social Security Act, which was added by [§] 9314 of the Omnibus Budget Reconciliation Act of 1986."

54 Fed.Reg. 40,286. "Also," stated HCFA, "we are making a conforming change that affects the indirect medical education payments of hospitals that became subject to the prospective payment system during the period October 1, 1983[,] through December 31, 1983." 54 Fed.Reg. 40,-286.

8. *See* 42 C.F.R. § 405.1885(a) ("[a]ny such request to reopen must be made within [three] years of the date of the notice of the intermediary...").

rendered the last determination, it is the [i]ntermediary's decision whether or not to reopen the cost report.

Consequently, the Board finds that it does not have jurisdiction over this appeal and hereby dismisses the case. This determination is subject to the provisions of 42 [U.S.C.A.] § 1395(f) [1395f] and 42 C.F.R. § 405.1875 and .1877.

(Doc. No. 7, Ex. 8 at ¶¶ 2 and 3).

## II. PROCEDURAL BACKGROUND

1. On June 13, 1994, the UC Hospital filed a complaint with this court against the Secretary, seeking judicial review of the PRRB's denial of jurisdiction determination. (Doc. Nos. 1 and 10 at 1). The Secretary submitted her answer on August 11, 1994. (Doc. No. 3).

2. On August 12, 1994, the UC Hospital and the Secretary entered into an agreed order with this court, whereby this case would be decided upon cross-motions for summary judgment.[9] (Doc. No. 4).

9. Pursuant to this first agreed order:
 a. the UC Hospital was to file its motion for summary judgment on or before September 30, 1994.
 b. the Secretary was to file her cross-motion for summary judgment on or before October 31, 1994. (Doc. No. 4).
 c. the UC Hospital was to file its reply on or before November 15, 1994.
 (Doc. No. 3).
 On September 30, 1994, the parties stipulated to an extension of time with this court, to permit UC Hospital to file its motion for summary judgment by October 7, 1994. (Doc. No. 5). On October 7, 1994, the parties further stipulated to an extension of time, allowing UC Hospital to file its motion for summary judgment on or before October 14, 1994, permitting the Secretary to file its cross-motion on or before November 14, 1994, and the UC Hospital to file its reply on or before November 29, 1994. (Doc. No. 6).

10. On November 15, 1994, the parties agreed to a second stipulated extension, whereby the Secretary would file her cross-motion for summary judgment on or before November 28, 1994, and the UC Hospital would file its reply on or before December 12, 1994. (Doc. No. 8). This extension was entered as an agreed order by the court. (Doc. No. 8). On November 30, 1994, the parties entered into a third stipulated extension. (Doc. No. 9). Pursuant to such stipulation, the Secretary was to file her cross-motion for sum-

3. On October 14, 1994, the UC Hospital filed its motion for summary judgment. (Doc. No. 7).

4. On December 12, 1994, the Secretary filed her cross-motion for summary judgment. (Doc. No. 10).[10]

5. On January 17, 1995, the UC Hospital filed its reply memorandum to the Secretary's cross-motion for summary judgment.[11] (Doc. No. 12).

6. On March 15, 1995, this court granted the Secretary's motion for leave to file, instanter, a response to UC Hospital's reply to the Secretary's cross-motion for summary judgment.[12] (Doc. No. 15).

## III. Discussion

### a. Applicable Medicare Law

#### 1. Medicare Program Reimbursement, In General

Under the federal Medicare program, administered by HCFA, a health care provider is reimbursed for the services it furnishes to Medicare beneficiaries. The Social Security

mary judgment on or before December 12, 1994, and the UC Hospital was to submit its reply on or before December 27, 1994. (Doc. No. 9). This extension was entered as an agreed order by the court. (Doc No. 9).

11. On December 27, 1994, through a fourth stipulated extension by the parties, the UC Hospital was granted until January 17, 1995, to file its reply. (Doc. No. 11).

12. On February 10, 1995, the Secretary filed a motion for leave to file, instanter, a response to the UC Hospital's reply to the Secretary's cross-motion for summary judgment. (Doc. No. 13). In such motion for leave, the Secretary asserted that the UC Hospital's reply contained new issues in support of its prior argument, as well as case discussion not significantly mentioned within the previous filings. (Doc. No. 13, Memorandum, at 1–2). On February 21, 1995, the UC Hospital filed its opposition to the Secretary's motion for leave to file a response to UC Hospital's reply to the Secretary's cross-motion for summary judgment. (Doc. No. 14). The court concluded that the Secretary had shown good cause to allow her response to be filed, pursuant to S.D.Ohio R. 7.2. The court instructed the clerk of courts to file the Secretary's attached response to the UC Hospital's reply to the Secretary's cross-motion for summary judgment. (Doc. Nos. 15 and 16).

Act, tit. XVIII, Pub.L. No. 89–97, 79 Stat. 286, 291 (1965), as amended, 42 U.S.C.A. § 1395, *et seq.*[13]; *See* 42 U.S.C.A. § 1395c (description of program and persons eligible). Reimbursement[14] is based on the lesser of the provider's customary charge for, or reasonable cost of, those services provided. 42 U.S.C.A. §§ 1395f(b)(1) (amount paid to provider of services), 1395x(v) (reasonable costs), and 1395rr(b)(2)(B) (payments with respect to services).

Provider reimbursement is generally handled by a fiscal intermediary, such as a private insurance company.[15] *See* 42 U.S.C.A. §§ 1395h (use of public or private agencies or organizations to facilitate payment to providers of services). The intermediary makes interim payments to a provider on at least a monthly basis and determines, at the close of the fiscal year in question, whether such payments exceeded or fell short of the actual amount of reimbursement the provider was due. *See* 42 U.S.C.A. §§ 1395g (payments to providers of services) and 1395x(v)(A)(ii) (making of suitable retroactive corrective adjustments); 42 C.F.R. § 413.60 (payments to providers: general.).

### 2. *Annual Cost Report Submissions and Intermediary Determinations*

To effectuate corrective adjustments in reimbursement, a provider submits an annual cost report to its intermediary for each fiscal year. 42 C.F.R. § 413.20 (financial data and reports). The intermediary, based upon the provider cost report submission, subsequently issues a notice of program reimbursement (NPR). 42 C.F.R. § 405.1803. This NPR explains the intermediary's determination of total program reimbursement due the provider and relates this determination to the provider's claimed total reimbursement due the provider for the pertinent period. 42 C.F.R. § 405.1803(a)(1)(i)–(ii).

In addition to issuing an original NPR, the intermediary may also reopen an NPR within three years of its issuance. 42 C.F.R. § 405.1885. The federal regulations provide:

> A determination of an intermediary ... by [the intermediary] ..., may be reopened with respect to findings on matters at issue in such determination or decision, ... either on motion of such [intermediary] or on the motion of the provider affected by such determination or decision to revise any matter in issue.... Any such request to reopen must be made within [three] years of the date of notice of the intermediary determination. No such determination or decision may be reopened after such [three]-year period....

42 C.F.R. § 405.1885(a). Jurisdiction for reopening an NPR "rests exclusively with [the intermediary] that rendered [it]." 42 C.F.R. § 405.1885(c).

### 3. *PRRB Appeals from Intermediary NPR Determinations*

The NPR is appealable to the Provider Reimbursement Review Board (PRRB) if (1) such provider is dissatisfied with the intermediary's determination; (2) the amount in controversy is $10,000 or more; and (2) the provider files a request for a hearing within 180 days after notice of the NPR. 42 U.S.C.A. § 1395*oo* (a); 42 C.F.R. 405.1835(a).[16] When an appeal is filed, the

13. As stated, for reference efficiency purposes, this opinion cites to the corresponding U.S.C.A. section. *See* United States Code Annotated, tit. 42, The Public Health and Welfare, §§ 1382 to 1395dd, at XVI-xviii.

14. A Medicare Program payment "to any provider of services or other person with respect to any items or services furnished any individual shall be regarded as a payment to such individual." 42 U.S.C.A. § 1395gg(a).

15. As set forth above, the fiscal intermediary for UC Hospital is Community Mutual Insurance Co. (Doc. No. 10 at 8).

16. The statute expressly provides:

> Any provider of services which has filed a required cost report within the time specified in the regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board ... if—
> (1) such provider—
> (A)(i) is dissatisfied with a final determination of its [intermediary] as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made ... for the period covered by such report, or
> (ii) is dissatisfied with a final determination of the Secretary as to the amount of the payment under [42 U.S.C.A. § 1395ww(b) and (d)] (determination of costs for inpatient

PRRB will decide questions relating to its jurisdiction to grant a hearing. 42 C.F.R. § 405.1873(a). If it finds jurisdiction, the PRRB may affirm, modify or reverse an intermediary's cost report determination. 42 U.S.C.A. § 1395oo (d); 42 C.F.R. § 405.1869. The PRRB may also make any other modifications on matters covered by such cost report (including modifications adverse to the provider or other parties) even though such matters were not considered in the intermediary's determination. 42 C.F.R. § 405.1869; *See* 42 U.S.C.A. § 1395oo (d).

HCFA may review a PRRB final determination, including the PRRB's decision relating to its jurisdiction to grant a hearing. 42 C.F.R. § 405.1875(a). HCFA may exercise this discretion on its own, in response to a provider's request, or in response to a request from HCFA. 42 C.F.R. § 405.1875(a). A provider requesting the Administrator to review a PRRB decision must file a written request with the Administrator within 15 days of receipt of the PRRB's determination. 42 C.F.R. § 405.1875(b).

### 4. Judicial Review

A provider may obtain judicial review of the PRRB's final decision or of HCFA's reversal, affirmation or modification of the PRRB decision. 42 U.S.C.A. § 1395oo (f)(1); 42 C.F.R. § 405.1877(a)(1)–(2). A civil action must be filed within 60 days from the date on which the provider received notice of the PRRB final decision or HCFA's reversal, affirmance or modification. 42 U.S.C.A. § 1395oo (f)(1); 42 C.F.R. § 405.1877(a)(1)–(2). A PRRB decision is deemed final for judicial review purposes unless HCFA, within 60 days of the PRRB notice of decision, reverses, affirms or modifies the PRRB decision. 42 U.S.C.A. § 1395oo (f); 42 C.F.R. § 405.1877. Such civil action may be filed in the United States District Court for the District of Columbia or in the federal court in which the provider is located. 42 U.S.C.A. § 1395oo (f)(1); 42 C.F.R. § 405.1877(f).

### b. Issue of Subject Matter Jurisdiction

██ This court has subject matter jurisdiction respecting the PRRB's decision to deny jurisdiction over the UC Hospital's contentions.

As set forth, *supra*, 42 U.S.C.A. § 1395oo (f)(1) provides:

> Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which the notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received.

A PRRB decision is final unless HCFA, within 60 days of the PRRB notice of decision, either reverses, affirms or modifies the PRRB decision. 42 U.S.C.A. § 1395oo (f); 42 C.F.R. § 405.1877.

The Supreme Court has held that it is the PRRB's determination that it is without authority to decide the matter at issue, or its failure to act "that triggers the right of judicial review." *Edgewater Hosp., Inc. v. Bowen*, 857 F.2d 1123, 1131 (7th Cir.1988) (citing and quoting *Bethesda Hospital Ass'n v. Bowen*, 485 U.S. 399, 404–07, 108 S.Ct. 1255, 1259–60, 99 L.Ed.2d 460 (1988)), *amended*, 866 F.2d 228 (7th Cir.1988), *reh'g denied, en banc*, 1989 U.S.App. LEXIS 647 (7th Cir. Jan. 10, 1989). The Sixth Circuit has, likewise, articulated that a PRRB's decision denying jurisdiction is a "final decision," sufficient to support 42 U.S.C.A. § 1395oo (f) district court jurisdiction. *Saline Community Hospital Asso. v. Secretary of Health and Human Services*, 744 F.2d 517, 518–19 (6th Cir.1984); *See also, Edgewater Hosp., Inc.*, 857 F.2d at 1131–32.

On April 14, 1994, the PRRB held "that it does not have jurisdiction over [the UC Hospital's] appeal and hereby dismisses this

---

hospital services, limitations, exemptions; computation of payment; and inpatient hospital service payments on basis of prospective rates).

(2) the amount in controversy is $10,000 or more, and

(3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination....

42 U.S.C.A. § 1395oo (a). The parameters of the applicable regulatory provision are similar to this statutory section. 42 C.F.R. 405.1835(a).

case." (Doc. No. 7, Ex. 8). HCFA did not, thereafter, seek to modify, affirm or reverse the PRRB's denial of jurisdiction. The court concludes that the PRRB's decision to deny jurisdiction was a final decision for judicial review purposes. *See Saline Community Hosp.*, 744 F.2d at 518–19. In sum, then, the court has subject matter jurisdiction to hear the matter respecting the PRRB's decision to deny jurisdiction.[17]

### c. Limitations on the Court's Scope of Review

■ Although the court has subject matter jurisdiction, its scope of review is, nonetheless, limited to addressing the specific and sole question whether the PRRB's decision denying jurisdiction was proper under the applicable law. *See Saline Community Hosp.*, 744 F.2d at 520 (although final decision prerequisite had been satisfied, district court had jurisdiction, limited to reviewing PRRB's conclusion that it lacked jurisdiction); *see also, Athens Community Hosp. v. Schweiker*, 686 F.2d 989, 994 (D.C.Cir.1982) (district court has jurisdiction to review a decision by the PRRB that it lacks jurisdiction to review a determination of the intermediary), *modified*, 743 F.2d 1 (D.C.Cir. 1984).

### d. Review of the PRRB's Decision to Deny Jurisdiction

#### 1. Standard of Review

Review of a PRRB's final decision is in accordance with the 5 U.S.C. § 702, *et seq.*, and based on the administrative record. 42 U.S.C.A. § 1395oo (f)(1). In an action for judicial review brought under 5 U.S.C. § 706, formerly the Administrative Procedure Act (APA)[18], a court may set aside an agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or which is unsupported by substantial evidence.[19] 5 U.S.C. § 706(2)(A) and (E).

■ Under this arbitrary and capricious standard, the court must determine "whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment." *Motor Vehicle Mfrs. Assn. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983). This standard of review is narrow; however, notwithstanding, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962)). If the agency's interpretation is reasonable, the court must uphold it even if the court would have reached a different interpretation had that issue first been presented to it. *Tallman*, 380 U.S. at 16, 85 S.Ct. at 801. However, the court must reject administrative constructions which are inconsistent with a statutory mandate, frustrate congressional policy, or, otherwise, not supported by substantial evidence on the record considered as a whole. *Federal Election Com. v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 29–33 (1981); *See also State Farm*

---

17. The Secretary does not argue that the UC Hospital's appeal was not timely filed or filed with the incorrect federal district court. *See* 42 U.S.C.A. § 1395oo (f)(1).

18. Defendant cites to the Administrative Procedure Act (APA). (Doc. No. 10 at 18). The APA was, however, repealed by Pub.L. 89–554, Sept. 6, 1966, 80 Stat. 381. The former APA's provisions were incorporated into 5 U.S.C. ch. 5 and 7.

19. In pertinent part, 5 U.S.C. § 706 reads:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] . . .
(E) unsupported by substantial evidence in a case subject to §§ 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; . . . .
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

*Mutual Auto. Ins. Co.*, 463 U.S. at 44, 103 S.Ct. at 2867.

### 2. PRRB's Decision to Deny Jurisdiction Over Cost Report Reopening Request

■ The PRRB acted reasonably, and thus, within the contours of 5 U.S.C. § 706 and 42 U.S.C.A. § 1395*oo* (f)(1) when it concluded it did not have jurisdiction to order the intermediary to reopen the FY 1986 through 1988 cost reports. 42 C.F.R. § 405.1885(c).

"Jurisdiction for reopening a determination or decision rests exclusively with that administrative body that rendered the last determination or decision." 42 C.F.R. § 405.1885(C); *See also* Medicare and Medicaid Guide (CCH) ¶ 7740 (1989) ("provider has no right to a hearing on a finding by an intermediary ... that a reopening ... is not warranted"). In the case at hand, it was the intermediary, not the PRRB, that was the administrative body to issue the FY 1986 through 1988 revised NPRs. (Doc. No. 7 at 14). Therefore, the PRRB acted in simple accordance with Medicare program regulations by denying jurisdiction to order the intermediary to reopen the cost reports in question.

### 3. PRRB's Decision to Deny Jurisdiction Over Objections to the Revised NPR Determinations

The PRRB, however, acted outside of the proper contours of 5 U.S.C.A. § 706, and thus, 42 U.S.C.A. § 1395*oo* (f)(1), when it denied jurisdiction over the UC Hospital's request that the PRRB affirm, reverse, or modify the intermediary's revised NPR determinations.[20] (Doc. No. 7, Ex. 8).

**20.** At first glance, it appears the PRRB might have read the UC Hospital's January 20, 1994, submission as only requesting that the PRRB require the intermediary to reopen its NPR determinations. (Doc. No. 7, Ex. 8 at 1–2). However, in the "Relief Requested" portion of its submission, it is clear that the UC Hospital did not just ask that the PRRB mandate the intermediary to reopen the NPR determinations. (Doc. No. 7, Ex. 1 at 4). The UC Hospital also requested that the PRRB affirm, modify or reverse the intermediary's revised NPR determinations. (Doc. No. 7, Ex. 1 at 4).

### A. Timeliness Issue

■ First, the PRRB improperly concluded it did not have jurisdiction over the UC Hospital's hearing request by reasoning that such request was filed more than 180 days from the intermediary's determination. (Doc. No. 7, Ex. 8).

■ A revised NPR is a separate and distinct determination from an initial NPR. 42 C.F.R. § 405.1889. Once the provider has satisfied the applicable jurisdictional obstacles, such provider should be afforded the right to have a PRRB hearing to contest the intermediary's revised NPR determination. *See* 42 C.F.R. § 405.1885(a); *see also, Edgewater Hosp., Inc.*, 857 F.2d at 1134; *Delaware County Memorial Hosp. v. Sullivan*, 836 F.Supp. 238, 245 (E.D.Pa.1991) (revised NPR was a "separate and distinct final determination, creating separate and distinct rights of appeal"). The imposition of unjust and inappropriate strictures would, otherwise, effect preclusion of a provider's ability to ever question a revised NPR. *See Id.*

In the case at hand, the PRRB deemed the UC Hospital's hearing request to be out-of-time, pursuant to 42 C.F.R. § 405.1841.[21] In so stating, the PRRB summarily reasoned that, in order for the provider to have achieved a hearing, it should have filed its request 180 days from the date of the initial NPRs, not from the July 30, 1993, revised NPRs.[22] (Doc. No. 7, Ex. 2–4, 7–8). The PRRB's conclusion fails to appreciate the fact that, under the regulations, the revised NPRs were separate and distinct determinations from the initial NPRs. *See* 42 C.F.R. § 405.1889. Therefore, despite the PRRB's contentions, the January 25, 1994, hearing request was, in fact, filed within 180 days of

**21.** Not at issue were whether the intermediary determinations were made with respect to the UC Hospital and whether the $10,000 jurisdictional threshold amount was met. *See* 42 C.F.R. § 405.1835.

**22.** For, if the PRRB had clocked the time from the July 30, 1993, revised NPR date, the UC Hospital would have been within the 180–day time-line.

the intermediary's separate and distinct July 30, 1993, revised NPR determinations.

### B. PRRB's Scope of Authority Over Indirect Medical Education (IME) Payments Issue

The PRRB also failed to rationally articulate whether the cost reports were or were not reopened to the extent that such reopenings touched upon the particular IME payments issue subject matter.

 An *in pari materia* reading of the applicable regulations, at 42 C.F.R. Part 405, establishes that the PRRB's scope of authority respecting a revised NPR determination is strictly limited to those cost report elements adjoined for the purpose of effectuating the revised NPR. Pursuant to 42 C.F.R. § 405.1885, "a determination of an intermediary ... may be reopened with respect to findings on matters at issue ... by the intermediary." The term, "matters at issue," is a limiting term. *See Albert Einstein Medical Ctr. v. Sullivan,* 830 F.Supp. 846, 849 (E.D.Pa.1992). It instructs that, when the intermediary proceeds in the pursuit of issuing a revised NPR, the cost report is reopened only to that narrowed and limited extent necessary to resolve particular matters touched upon by the revised NPR:

> In light of the explicit language in 42 C.F.R. § 405.1885, limiting reopenings to findings on matters at issue in [the original NPR] and in 42 C.F.R. § 405.1889 characterizing revisions as separate and distinct determination[s] for purposes of Board appeals, [it is reasonable] to interpret the intermediary determination on reopening as limited to the particular matters revisited on the second go-around.

*HCA Health Services of Oklahoma, Inc. v. Shalala,* 27 F.3d 614, 620 (D.C.Cir.1994) (internal quotations omitted).[23]

 There is, thus, a necessary distinction to be drawn between the PRRB's scope of decision-making authority regarding an initial NPR and its authority respecting a revised NPR. The regulations at 42 C.F.R. § 405.1869 provide:

> The Board shall have the power to affirm, modify, or reverse a determination of an intermediary with respect to a cost report and to make any other modifications on matters covered by such cost report (including modifications adverse to the provider or other parties) even though such matters were not considered in the intermediary's determination....

The initial cost report submission, upon which the initial NPR is based, covers all data necessary to determine final provider reimbursement totals. *See* 42 C.F.R. Part 412, Subpart B. The PRRB's scope of authority respecting the initial NPR is, therefore, extremely broad. *See* 42 C.F.R. § 405.1869 and Part 413, Subpart B. In contrast, the PRRB's scope of authority regarding a revised NPR determination is limited. As set forth above, a cost report is reopened only to that narrowed and limited extent necessary to resolve particular matters touched upon in the revised NPR. As such, the PRRB's decision-making authority respecting a reopened cost report reaches only so far as to make modifications on cost report elements which were explicitly adjoined for the purpose of effectuating the revised NPR.[24] *See* 42 C.F.R. 405.1869.

 This initial/revised NPR authority distinction, then, creates a fourth jurisdictional question that must be evaluated before the PRRB can properly resolve whether it does or does not have authority to affirm, reverse or modify an intermediary's revised NPR determination. Specifically, not only must the PRRB determine whether the amount in controversy was at least $10,000, the hearing request was made within 180

---

**23.** In citing *HCA Health Services,* this court declines the UC Hospital's invitation to subscribe to pertinent tenets of the Ninth Circuit decision, *Oregon on Behalf of Oregon Health Sciences Univ. v. Bowen,* 854 F.2d 346, 349 (9th Cir.1988). In contrast to the Ninth Circuit's conclusion, this court agrees with the D.C.Circuit that 42 U.S.C.A. § 1395x(v)(1)(A)(ii) and pertinent regulations, thereto, are intended to permit year-end

balancing of monthly installments, not address the question of cost report reopenings. *See Id.* at 349; *HCA Health Services,* 27 F.3d at 618.

**24.** Otherwise, to construe a revised NPR as reopening the entire cost report would nullify any semblance of initial finality. *Accord, Albert Einstein Medical Center,* 830 F.Supp. at 849.

days of the revised NPR, and the intermediary determination was made with respect to the provider. *See* 42 C.F.R. § 405.1835. In addition, the PRRB must determine whether the intermediary reopened the cost reports to the extent that such reopenings encompassed the particular subject matter or matters upon which the provider's appeal was premised.[25]

■ In the case at hand, the PRRB recites only that it did not have jurisdiction over the UC Hospital's request because the provider filed out of time.[26] The PRRB did not enter into any analysis, whatsoever, as to whether the FY 1986 through 1988 cost reports were reopened to the extent that such reopenings touched upon the particular IME payments issue subject matter. The PRRB's jurisdictional analysis was, therefore, incomplete and insufficient under 5 U.S.C. § 706.

### e. Question of Remand

■ The court finds that the PRRB is the more appropriate entity to address its own fourth presented question of jurisdiction. As the Supreme Court has enunciated, "[t]he reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given." *State Farm Mutual Auto. Ins. Co,* 463 U.S. at 43, 103 S.Ct. at 2867 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947)). The case, *Mercy Hospital of Miami, Inc. v. Shalala,* is also instructive on why it is best for this court to remand this question back to the PRRB, than to attempt to answer the jurisdictional question itself:

Given the limited role played by the court and the court's lack of expertise on such a highly technical filed as Medicare provider

reimbursement, remanding the case to [PRRB] for further proceedings not inconsistent with this opinion seems a more appropriate course for the court to take than imposing an uninformed judicial determination as to the reimbursement amount on HCFA. The court will not set sail on a perilous course and thrust itself into a domain that is expressly reserved by Congress to the agency. Administrative agencies with their varied expertise are created to address social problems that the judiciary as an institution, with its rigid adherence to *stare decisis* and *res judicata,* may be ill-equipped to handle. The court's role in a modern administrative state is to satisfy itself that an agency acted consistently and even-handedly so as to instill and preserve public confidence in government institutions.

Civ.A. No. 91–3268(RCL), 1993 WL 475517, at *11 (D.D.C.1993); *See also, University of Cincinnati v. Shalala,* Case No. C–1–93–841 (S.D.Ohio March 15, 1995) (Rubin, J.) (denying parties' motions for reconsideration and remanding said action).

This case is, therefore, remanded to PRRB for further proceedings not inconsistent with this decision. The PRRB is to correct and complete its jurisdictional analysis. Further, if the PRRB finds it has jurisdiction over this matter, the PRRB, pursuant to its authority, should consider the substantive IME payments issue presented.

### IV. Conclusions of Law

1. This court has jurisdiction over this matter pursuant to statutory provisions described at 42 U.S.C.A. § 1395*oo* (f) and 28 U.S.C. § 1331. *See,* above, III, Discussion, b., Issue of Subject Matter Jurisdiction.

---

25. The court considers this question regarding the PRRB's scope of decision-making authority to be a jurisdictional one. "It has long been said that 'jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Nationwide Bldg. Maintenance v. Reich,* 14 F.3d 1102, 1106 (6th Cir.1994) (quoting *Ex parte McCardle,* 74 U.S. (7 Wall) 506, 514, 19 L.Ed. 264 (1868)). Only if the PRRB has jurisdiction does it have the power to

affirm, modify or reverse a revised NPR determination.

26. As stated, above, such "out of time" conclusion was improper, in that (1) the revised NPR determinations were separate and distinct from the initial NPR determinations and (2) the UC Hospital filed its January 25, 1994, hearing request within 180 days of the July 30, 1993, NPR determinations issuance date. *See* 42 C.F.R. § 405.1889.

2. The court's jurisdiction over this matter is limited to addressing the specific and sole question whether the PRRB's decision to deny jurisdiction was appropriate under the law. *See*, above, III, Discussion, c., Limitations on the Court's Scope of Review.

3. Review of the PRRB's decision to deny jurisdiction over the UC Hospital's January 25, 1994, submission is in accordance with 42 U.S.C.A. § 1395*oo* (f)(1) and, therefore, 5 U.S.C. § 702, *et seq. See*, above, III, Discussion, d., Review of the PRRB's Decision to Deny Jurisdiction, 1., Standard of Review.

4. The PRRB acted reasonably under 5 U.S.C. § 706, and, thus, 42 U.S.C.A. § 1395*oo* (f)(1), when it concluded it did not have the authority to order the intermediary to reopen the FY 1986 through 1988 cost reports. *See*, above, III, Discussion, d., Review of the PRRB's Decision to Deny Jurisdiction, 2, PRRB's Decision to Deny Jurisdiction Over Cost Report Reopening Request.

5. The PRRB improperly concluded it did not have jurisdiction over the UC Hospital's hearing request by reasoning that such hearing request was untimely filed. *See*, above, III, Discussion, d., Review of the PRRB's Decision to Deny Jurisdiction, 3., PRRB's Decision to Deny Jurisdiction Over Objections to the Revised NPR Determinations, A., Timeliness Issue.

6. The PRRB's jurisdictional analysis was incomplete, and, therefore, insufficient under 5 U.S.C. § 706, and, thus 42 U.S.C.A. § 1395*oo* (f)(1), when the PRRB failed to address the question whether the FY 1986 through 1988 cost reports were reopened to the extent that such reopenings encompassed the particular IME payments issue subject matter.

7. This case is remanded to PRRB for further proceedings not inconsistent with this decision.

 a. Pursuant to ¶ 5, the PRRB is to correct its determination that the UC Hospital filed its hearing request out of time. *See*, above ¶ 5.

 b. Pursuant to ¶ 6, the PRRB is to complete jurisdictional analysis.

 c. If, after completing its jurisdictional analysis, the PRRB so finds it has

jurisdiction, the PRRB should consider the substantive IME payment assertions presented by the UC Hospital. *See*, above, III, Discussion, e., Question of Remand.

IT IS SO ORDERED.